UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERTO G. ALAMO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 12-cv-4327 |
| v. ) | |
| ) | Judge Sharon Johnson Coleman |
| THE CITY OF CHICAGO, CHARLIE BLISS ) | |
| and PATRICK STEFAN, in their Individual ) | |
| Capacities, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, a former Chicago firefighter, Roberto G. Alamo ("Alamo") filed a seven-count complaint against the City of Chicago (the "City"), his former superior Lieutenant Charlie Bliss ("Bliss"), and former coworker Patrick Stefan ("Stefan") (together "defendants"), alleging claims of discrimination and retaliation based on his national origin in violation of Title VII of the Civil Rights Act and 42 U.S.C. § 1983, a claim for failure to accommodate under the Americans with Disabilities Act (the "ADA"), and claims against the City and Stefan for common law assault and battery. Defendants moved to dismiss all claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons stated below, the Court grants defendants' motion to dismiss.

**Background**

The following facts are taken from the third amended complaint and accepted as true for the purposes of ruling on the instant motion. Alamo, who is Puerto Rican, was employed by the Chicago Fire Department in 2006. In 2009, he was transferred from Chicago Fire Department Engine Company 89 to Company 55. His supervisor at Company 55 was Lieutenant Bliss.

Shortly after Alamo started with Company 55 and through 2011, he experienced verbal and physical harassment from his fellow firefighters, including name calling related to his race and national origin. In March 2011, one firefighter negatively commented on Alamo being a Puerto Rican and "physically assaulted" him. He also claimed that his fellow firefighters stole or threw out his food. Additionally, he complained about being "detailed excessively" (or reassigned as explained below) as compared to his colleagues. He reported the harassment to Bliss on numerous occasions and in a written complaint to his battalion chief and Bliss, without response.

On September 13, 2011, Alamo reported to work but was not feeling well due to allergies and informed Bliss and a colleague that he would be in the television room and might be sleeping. About an hour later, Stefan, a captain on a different truck than Alamo and thus not his supervisor, woke Alamo up, yelled profanities at him and said "I don't like your kind, you better put in a transfer and get out of this firehouse because I don't want you here." Stefan then chest bumped Alamo, used more profanity and threatened physical violence. Later Alamo was again pushed against a wall by Stefan, which was witnessed by Bliss. Alamo called 911 for assistance and spoke to officers when they arrived, but did not press charges because a chief assigned to Engine Headquarters 42 asked him to try to keep the incident in house.

On September 14, 2011, at 6:00 am, Alamo was relieved of his duty by a fellow firefighter and took the bus on his route home. Alamo exited the bus after a few blocks due to chest pain, dizziness and a migraine. He called a friend to pick him up and take him to the hospital where he explained to the emergency room doctor that he had been chest bumped and pushed at work the day before. The doctor diagnosed him with a work-related chest contusion and work-related stress and possible post-traumatic stress disorder ("PTSD"). Alamo met with his primary care physician the next day, who referred Alamo to a psychologist and a psychiatrist

and diagnosed him with work-related anxiety. His doctor ordered a medical leave as of September 14, 2011, due to the workplace incident with Stefan. Alamo reported the leave to the captain of Company 55 and provided him with the paperwork from his physician and the emergency room.

On March 13, 2012, Sylvia Tienda ("Tienda"), Chicago Fire Department medical section chief, informed Alamo that he was running out of medical leave time and directed him to get a release from this treating physician to return to full duty status without restrictions. He met with his treating physician the next day, who authorized Alamo to return to work without restriction. On March 16, 2012, Alamo gave the authorization letter to Tienda, who informed him that he also needed a prescription note authorizing a Functional Capacity Evaluation. Alamo obtained the prescription and delivered it to Tienda. On March 21, 2012, a doctor in the medical section, Dr. Issac Morcos, told Alamo that they needed progress notes from his treating physicians before clearing him to return to work. His doctors sent their notes in the following days. Alamo filed an inquiry with Tienda on March 30, 2012, about his work status and received a response from her on April 3, 2012, that Dr. Morcos was requesting his medical records dating back to 2009, and wanted Alamo to undergo further psychological and physical testing before clearing him to return to work.

On April 4, 2012, Alamo filed an EEOC charge alleging discrimination and retaliation against the Fire Department. About two weeks later Tienda scheduled Alamo for physiological testing with Dr. Cavanaugh to occur on May 1 and May 24, 2012. Alamo attended the first session, however, Dr. Cavanaugh refused to continue his evaluation without reviewing additional medical records requested from Alamo, which he chose not to provide. On July 3, 2012, Alamo received a letter from the Fire Department's human resources deputy commissioner explaining

3

that his leave time was exhausted and that if he did not return to work, resign or go on a leave of absence, in about two weeks he would be designated as "absent without authorized leave." On July 6, 2012, the Fire Department stopped paying Alamo his salary and benefits. Several months later, Alamo was reinstated as a firefighter.

Alamo filed his initial complaint on June 4, 2012, against Stefan, Bliss and Tienda, asserting against each claims of race discrimination under Sections 1981 and 1983. Those defendants moved to dismiss the complaint and in response Alamo sought leave to file an amended complaint to assert additional allegations related to his unauthorized leave status. The Court allowed the amendment. Those defendants again moved to dismiss the complaint. After the defendants' motion was fully briefed, in a written statement the Court granted in part and denied in part the motion and allowed Alamo leave to file an amended complaint. Alamo then filed his second amended complaint, adding the City, Dr. Morcos and Dr. Hugh Russell as defendants, and a claim against the City for race discrimination under Title VII. Those defendants answered the complaint and the parties engaged in written discovery and were attempting to schedule Alamo's deposition when his counsel sought leave to withdraw. The Court allowed Alamo to substitute counsel and to file an amended complaint, and struck the discovery deadlines. Alamo then filed the instant complaint, against which defendants have moved to dismiss.

**Legal Standard**

A court must dismiss any action which lacks subject matter jurisdiction. The party asserting jurisdiction has the burden of establishing it under Rule 12(b)(1). *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009). "On a motion to dismiss for lack of subject matter jurisdiction, the court is not bound to accept the truth of the allegations in the

4

complaint, but may look beyond the complaint and the pleadings to evidence that calls the court's jurisdiction into doubt." *Bastien v. AT & T Wireless Servs., Inc.*, 205 F.3d 983, 990 (7th Cir. 2000). However, when reviewing a defendant's Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences in the non-movant's favor. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007). Detailed factual allegations are not required, but the plaintiff must allege facts that when "accepted as true … state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the complaint's factual content allows the Court to draw a reasonable inference that the defendants are liable for the misconduct alleged. *Id.*

**Discussion**

*1. Title VII Claims*

Alamo seeks recovery from the City under Title VII asserting claims for national origin discrimination, both hostile work environment and disparate treatment, and retaliation, Counts 1, 2 and 3 respectively. Defendants argue that these claims should be dismissed because Alamo failed to file them in a federal court complaint within 90 days of receiving his EEOC right-to-sue letter. Alamo received his letter on May 2, 2013, from the EEOC charge he filed against the Chicago Fire Department for discrimination based on national origin and disability, and retaliation. Accordingly, his 90-day deadline to file a civil action based on that charge was July 31, 2013. Alamo's instant complaint was filed on August 1, 2014. Thus, Alamo's claims only survive as timely if they were made in or relate back to a previous complaint.

Alamo argues that his Title VII claims were timely filed in his second amended complaint because it included national origin discrimination "allegations," and in any event, the claims relate back to that complaint pursuant to Rule 15(c). The second amended complaint, filed on July 18, 2013, contained three claims: "Title VII Race Discrimination," against the City, "Section 1981 Race Discrimination" against Stefan, and "Section 1983 Race Discrimination" against Bliss, Tienda, and Drs. Morcos and Russell. The Title VII claim alleged the following:

> 46. Alamo is a member of a protected class by race or national origin, specifically he is Latino;
>
> \* \* \*
>
> 48. Alamo suffered an adverse employment action in that he was verbally and physically harassed at work because of his race or national origin, and he has had hurdles and challenges placed before him in his attempts to return to work after a medical leave of absence because of his race or national origin.

Alamo argues that it is plain from these allegations that he was asserting a national origin discrimination claim. However, defendants contend that Alamo's claim is one of race discrimination (given its title), which is "not synonymous" with national origin discrimination. Even Alamo recognizes this distinction, substituting "a Latino," "derogatory and racist comments," "racial harassment," "racial discrimination," and disparate treatment from similarly situated "white" and "non-Latino" firefighters for, in the instant complaint, a "Puerto Rican Latino," harassment "because of his national origin" and that he suffered "national origin discrimination." While courts treat 'Puerto Rican' as both a racial and a national origin classification, [1] the distinction is not necessary to this analysis (or resolution of his claim, per

---

[1] *See, e.g., Velez v. City of Chicago*, 442 F.3d 1043, 1049-1050 (7th Cir. 2006) (national origin); *Hampson v. Bd. of Educ.*, 81 C 6425, 1986 WL 8369, at *3-5 (N.D. Ill. July 21, 1986) (national origin); *Rosado v. Chicago Transit Auth.*, 13 C 5594, 2014 WL 237937, at *2 (N.D. Ill. Jan. 22, 2014) (race); *Hansborough v. City of Elkhart Parks & Rec. Dep't*, 802 F. Supp. 199, 206-208 (N.D. Ind. 1992) (race); *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1188 (2d Cir. 1987) (race). The Court notes, however, that in this case a claim based on national origin discrimination may be appropriate. "The term 'national origin' on its face refers to the country where a person was born, or more broadly, the country from which his or her ancestors came." *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 94 S. Ct. 334, 336, 38

6

below) because the Court finds that Alamo's Title VII claims in the instant complaint are founded on the same conduct and therefore relate back to his second amended complaint. *See* Rule 15(c)(1)(B). Despite their timeliness, Alamo's Title VII claims nonetheless fail.

To state a claim for hostile work environment discrimination, Alamo must set out factual allegations to plausibly show: (1) the work environment was both objectively and subjectively offensive; (2) the harassment was based on his membership in a protected class; (3) the conduct was either severe or pervasive; and (4) there is a basis for employer liability. *Dear v. Shinseki*, 578 F.3d 605, 611 (7th Cir. 2009). The Court looks at the totality of the circumstances to determine whether the conduct is sufficiently severe or pervasive to be actionable, including the frequency of the discriminatory conduct, whether a reasonable person would find it offensive, whether it is physically threatening or humiliating conduct as opposed to verbal abuse, whether it unreasonably interferes with an employee's work performance, and whether it was directed at the victim. *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 552 (7th Cir. 2002). Only a "hellish" workplace is actionable as a hostile work environment. *Perry v. Harris Chernin Inc.*, 126 F.3d 1010, 1013 (7th Cir. 1997). Defendants argue that Alamo fails to plead the requisite severe or pervasive harassment necessary to assert a hostile work environment claim, given the facts alleged in the complaint. The Court agrees.

Here, Alamo alleges that he reported to Bliss the following incidents occurring between 2009 and 2011, which created a hostile work environment: "fellow firefighters" called him a "spic" and a "fucking Puerto Rican," and used the term "Nigger" around the firehouse; in March 2011, a firefighter directed derogatory comments towards him regarding his national origin and

---

L.Ed.2d 287 (1973); *see also* 29 C.F.R. § 1606.1 (EEOC defines as denial of equal employment opportunity because of individual's, or his or her ancestor's, place of origin, or characteristic of a national origin group). Here, Alamo claims to be of Puerto Rican descent, and while Puerto Rico is presently a territory of the United States, at one point it was a sovereign island populated by aboriginal peoples.

7

"physically assaulted" him; and several instances of coworkers stealing or throwing out his food.[2] The incidents here do not meet the requisite standard of severe or pervasive conduct. While Alamo alleges an instance of physical assault, the derogatory comments that were directed towards him ("spic" and "fucking Puerto Rican") were not physically threatening or intimidating either by their frequency or their content. Although these comments are insensitive and inappropriate for the workplace, offensive utterances do not raise the level of harassment to severe or pervasive. *See, e.g.*, *Ford v. Minteq Shapes & Servs., Inc.*, 587 F.3d 845, 848 (7th Cir. 2009) ("Title VII is not … a general civility code and will not find liability based on the sporadic use of abusive language.") Further, these few incidents were not pervasive, occurring over a span of three years, thus diluting their effect and severity. And other than Alamo's conclusion, there are no facts alleged to support that the disappearance of his food was motivated by his national origin, or that any of the above incidents unreasonably interfered with his work performance. While these incidents may be evidence of certain racist individuals in his workplace, they do not constitute harassment so "severe or pervasive to alter the conditions of employment and create an abusive working environment." *Ezell v. Potter*, 400 F.3d 1041, 1047 (7th Cir. 2004).

Alamo also fails to state a claim under Title VII for disparate treatment and retaliation. Both claims require Alamo to plead an adverse employment action. *See Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009) (Title VII retaliation requires a plaintiff to demonstrate that he engaged in a legally protected activity, suffered an adverse employment action, and causal connection between the two); and *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir.

---

[2] The incident with Stefan, while colorful, is not considered in this analysis because it cannot form the basis for employer liability as Alamo left the workplace for medical leave less than 24-hours after the encounter and it was not alleged to be a part of those incidents Alamo reported to Bliss. *See Cerros v. Steel Tech., Inc.*, 398 F.3d 944, (7th Cir. 2005) ("employers are liable for a coworker's harassment only when they have been negligent either in discovering or remedying the harassment").

8

2014) (A complaint alleging discrimination under Title VII need only aver that the employer instituted a specified adverse employment action against the plaintiff on the basis of his national origin.) "[N]ot everything that makes an employee unhappy is an actionable adverse action. For an employment action to be actionable, it must be a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibility, or a decision causing a significant change in benefits." *Lewis v. City of Chicago*, 496 F.3d 645, 653 (7th Cir. 2007). While Alamo is not required to plead a prima facie case at this stage, he nonetheless retains the burden of alleging facts sufficient to state all the required elements of his claim. *Twombly*, 550 U.S. at 569-70. Alamo fails to do so here.

Alamo generally alleges that he was retaliated against for reporting harassment in that the City placed "hurdles and challenges before him in his attempts to return to work after a medical leave of absence." In addition to this allegation, in support of his discrimination claim he also alleges that he was "detailed excessively." Defendants argue that excessive detailing (being reassigned) is not an adverse action, but at most a mere inconvenience, and that the alleged "hurdles and challenges" faced by Alamo fail to qualify as materially adverse because they did not change his pay, benefits or title. Alamo does not directly respond to these arguments, rather he claims that defendants' actions are part of a larger and coordinated course of conduct which resulted in his eventual removal from active employment status. His argument, however, is inconsistent with his complaint and not well-taken. Alamo alleges in his complaint that his active employment status changed when *he* reported to a captain that he needed to take a doctor-ordered medical leave. (Dkt. # 86, ¶¶ 27, 29.) He also alleges that he was later reinstated as a firefighter. (*Id.* ¶ 45.) Further he does not allege, and none of his allegations suggest, that Bliss and Stefan or any of the third parties in the medical section mentioned in the complaint

9

coordinated or colluded to remove him from active status.

Regarding the sufficiency of his claim, Alamo does not allege any supporting facts regarding "detailing," including what it is or that it is a significant change in employment status, or that it caused him a significant change in benefits. This alone is an indication that the claim should fail. The Court understands detailing to be akin to a temporary transfer. *See, e.g., Warrick v. Pierce*, 554 F. Supp. 895, 902 (S.D. Ind. 1983) ("'Detailing' is the practice of temporarily assigning persons to other positions pending permanent staffing."). "[A] purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance, cannot rise to the level of a materially adverse employment action." *Williams v. Bristol–Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996). Here, Alamo has failed to allege that detailing in his situation led to decreased wages or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or any other indicia of a significant change in status. *Cf. Lavalais v. Village of Melrose Park*, 734 F.3d 629, 634 (7th Cir. 2013). The Court finds that "excessive detailing" as alleged here is not an adverse employment action.

With respect to the alleged hurdles and challenges to returning to work after medical leave, Alamo alleges that he was directed to get a release from his treating physician to return to full duty without restrictions, a prescription authorizing a Functional Capacity Evaluation, progress notes from treating physicians, medical records dating back to 2009, and to undergo further psychological and physical testing. Alamo complied with all the directives except through counsel he informed the medical section that we would not provide the additional medical records. Dr. Cavanaugh refused to continue the psychological evaluation of Alamo without reviewing his medical record, and thus he could not be cleared by the medical section to return to work. His leave time subsequently exhausted and the City stopped paying Alamo his

salary and benefits because he had not returned to work. While a change in pay and benefits may amount to an adverse employment action, defendants argue and the Court agrees that defendants' actions are consistent with lawful conduct and therefore not actionable. Alamo responds, without a basis, that this argument should be rejected and points to the allegations in his complaint.

However, the alleged behavior is as consistent with lawful conduct as it is with wrongdoing, thus Alamo fails to suggest a plausible factual basis for his legal conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007); *Brooks v. Ross*, 578 F.3d 574, 581-82 (7th Cir. 2009). The complaint's allegations must "plausibly" suggest that the plaintiff is entitled to relief; if the allegations give rise to an "obvious alternative explanation," then the complaint may fail to adequately state a claim. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 550 U.S. at 557; *Twombly*, 550 U.S. at 567). The facts alleged here demonstrate that Alamo's delay in return to work was due to his failure to provide requested medical records for an exam Dr. Cavanaugh felt was necessary for him to return to duty following a medical leave. Alamo had been on a medical leave for six months with a diagnosis of a chest contusion, stress, possible PTSD and anxiety, all being work-related. An "obvious alternative explanation" is that the fire department, as an agency in the public service, wanted to be certain that its firefighter was mentally and physically fit to return to duty. *See Coffman v. Indianapolis Fire Dep't*, 578 F.3d 559, 566 (7th Cir. 2009) (fire departments have the "obligation to the public to ensure that its workforce is both mentally and physically capable of performing what is doubtless mentally and physically demanding work.") Thus, "[a]s between that 'obvious alternative explanation' [ ] and the purposeful, invidious discrimination respondent asks us to infer, discrimination is not a plausible conclusion." *Iqbal*,

556 U.S. at 682 (internal citation omitted). Further, Alamo has failed to allege any causal link between his reports of harassment to Bliss and the subsequent actions of the medical section personnel, Tienda and Drs. Marcos and Cavanaugh. Indeed it was Dr. Cavanaugh, not alleged to have had knowledge of or to have participated in any national origin discrimination, who refused to continue his evaluation without reviewing medical records.

For all these reasons, Alamo's Title VII claims fail and are dismissed.

*2. Section 1983 Claim*

Alamo's § 1983 claim is based on hostile work environment race discrimination in violation of the Equal Protection Clause, a claim for which severe or pervasive conduct is required. *Lavalais*, 734 F.3d at 635 (*citing Rodgers v. White*, 657 F.3d 511, 517 (7th Cir. 2011) (Title VII and § 1983 race discrimination employment claims are analyzed under the same standards)). Here Alamo alleges, as set forth above, that Bliss was aware that other employees were harassing him because of his race and national origin, but failed to remedy the alleged hostile work environment. Accordingly, Alamo's § 1983 claim fails for the reasons above, failure to plausibly show severe or pervasive conduct.

*3. ADA Claim*

In Count 5, Alamo claims that the City violated his rights under the ADA for failure to accommodate his PTSD disability. Defendants argue that his claim should be dismissed as untimely because Alamo failed to file it in a complaint within 90 days of receiving his May 2, 2013, EEOC right-to-sue letter. As stated above, his 90-day deadline to file a civil action based on his disability charge was July 31, 2013. Alamo's instant complaint was filed on August 1, 2014. Thus, Alamo's claims only survive as timely if they were made in or relate back to a previous complaint. His second amended complaint, filed on July 18, 2013, does not contain an

12

ADA claim and is completely void of any allegations regarding disability.

Further, his ADA claim does not relate back to the second amended complaint. Rule 15(c)(1)(B) states that "[a]n amendment to a pleading relates back to the date of the original pleading when the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." The conduct or occurrence set out in the second amended complaint is, essentially, that Alamo's coworkers harassed him due to his race or national origin, that his supervisor knew of the harassment and did nothing to stop it, and that personnel in the department's medical section discriminated against him based on his race by failing to clear him to return to work. Here, he alleges that he "made repeated requests to return to work, thereby asking the City to make a reasonable accommodation to his disability." Accordingly, Alamo's ADA claim is based on different conduct not set out – or attempted to be set out – in the second amended complaint and therefore does not relate back.

Notwithstanding its untimeliness, Alamo's claim fails. To state a claim for failure to accommodate under the ADA, a plaintiff must allege that (1) he is a qualified individual with a disability, (2) his employer was aware of the disability, and (3) his employer failed to reasonably accommodate that disability. *Ekstrand v. Sch. Dist. of Somerset*, 583 F.3d 972, 975 (7th Cir. 2009). Defendant argues that Alamo has failed to plead facts suggesting any of the required elements, while Alamo contends that his complaint satisfies each. Even taking the facts alleged in the light most favorable to Alamo, that he is qualified with a PTSD disability and that the City was aware of the disability, he fails to allege that he requested an accommodation or that the City failed to reasonably accommodate his PTSD. Alamo alleges only that he made requests to return to work, "thereby" asking the City to accommodate his disability. As with his other claims,

13

Alamo makes generalized conclusory statements, failing to provide the necessary connecting facts. Essentially, Alamo claims that the accommodation he "reasonably" requested was that he get his job back, which is what he argues in his brief. (Dkt. # 99, p. 16.) This is a confusing allegation indeed, as the ADA requires an employer to make reasonable accommodations to enable a disabled employee to perform his job duties. An employer must be "willing to consider making changes in its ordinary work rules, facilities, terms, and conditions in order to enable a disabled individual to work." *Siefken v. Village of Arlington Heights*, 65 F.3d 664, 666 (7th Cir. 1995). Here, Alamo asks nothing of the City other than re-employment. This is not a request for an accommodation, and further not an "accommodation" as envisioned by the ADA. *Id.* Accordingly, his claim is dismissed.

*4. Assault and Battery Claims*

Having dismissed Alamo's federal claims, this Court ultimately has discretion over whether to exercise supplemental jurisdiction over his remaining state law assault and battery claims. *Carlsbad Tech., Inc. v. HIF BIO, Inc.*, 556 U.S. 635, 129 S. Ct. 1862, 1866, 173 L.Ed.2d 843 (2009); 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction...."). This Court declines to exercise jurisdiction over Alamo's state law claims.

The Court notes that even if it were to exercise jurisdiction over these claims, they nonetheless would be dismissed. Alamo's assault and battery claims arise out of an incident that occurred in the fire station during which fellow firefighter defendant Stefan allegedly verbally harassed, chest bumped and pushed Alamo. Defendants argue that the Illinois Workers' Compensation Act ("IWCA") preempts Alamo's assault and battery claims because they are

14

workplace injuries. The Court agrees.

"Workplace assaults and batteries are generally compensable under the IWCA, and, therefore, not actionable at common law." *Damato v. Jack Phelan Chevrolet Geo, Inc.*, 927 F. Supp. 283, 291 (N.D. Ill. 1996); *see also Juarez v. Ameritech Mobile Commc'ns, Inc.*, 957 F.2d 317, 323 (7th Cir. 1992) (quoting *Rodriquez v. Indus. Comm'n*, 95 Ill.2d 166, 447 N.E.2d 186, 190 (1992)). In order to avoid preemption, Alamo must show that the City committed, commanded, or expressly authorized Stefan to commit an intentional tort. *Tessendorf v. Edward Hines Lumber Co.*, 393 F. Supp. 2d 686, 692 (N.D. Ill. 2005) (citing *Meerbrey v. Marshall Field & Co.*, 139 Ill.2d 455, 464, 564 N.E.2d 1222 (1990)).

Here, it is clear from the complaint's allegations that the alleged assault and battery took place at Alamo's workplace during work hours and in the course of his duties as an employee. Further, Alamo does not allege, nor is it suggested by his complaint, that the City commanded or authorized Stefan to inflict injuries on Alamo or to conduct himself in a discriminatory manner. Alamo does not dispute the nature of his claims as workplace injuries, rather he argues, without authority to support his interpretation of the statue, that as a firefighter he is not subject to the IWCA for claims other than those resulting in serious and permanent disfigurement from burns. While the IWCA specifically allows for such claims, it is not the exclusive means by which firefighters can receive compensation. *See* 820 ILCS 305/8(c) (noting that compensation is also payable under paragraphs (d), (e) or (f)). Therefore, Alamo is not exempt from the IWCA and the Court finds his claims for assault and battery would be preempted by the Act.

Having determined that all of Alamo's claims will be dismissed, the Court finds that allowing leave to amend in this case would be futile and a waste of judicial resources. This is Alamo's fourth complaint. With the exception of his ADA claim, Alamo has attempted to

properly assert the claims in the instant complaint since his original filing. The Court previously dismissed some of these same claims and has allowed amendment on two occasions. Given the nature of this case, any additional allegations that would move his claims from possible to plausible were surely known to Alamo in 2012, when he opened this case and possibly during the seven months of discovery in late 2013, and early 2014. Because he has had several opportunities to properly plead claims and remedy deficiencies, including this most recent seven-count, twenty-page complaint, the Court will not allow further amendment.

**Conclusion**

For the foregoing reasons, defendants' motion to dismiss [92] is granted. Alamo's federal claims, Counts 1, 2, 3, 4 and 5, are dismissed with prejudice. His state law claims, Counts 6 and 7, are dismissed without prejudice, so that Alamo may file his claims in state court if he so chooses.

SO ORDERED.

_____
SHARON JOHNSON COLEMAN
United States District Judge

DATED: July 28, 2015