# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROBERT G. ALAMO, | ) |
| Plaintiff, | ) Case No. 12-cv-4327 |
| v. | ) Judge Sharon Johnson Coleman |
| THE CITY OF CHICAGO and CHARLIE BLISS, in his individual capacity, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

The plaintiff, former Chicago firefighter Robert G. Alamo, brought this case against the City of Chicago, his former supervisor Lieutenant Charlie Bliss, and his former coworker Patrick Stephan. The defendants moved to dismiss and, after briefing, this Court granted that motion. That ruling was subsequently appealed to the Seventh Circuit, which reversed the dismissal of Alamo's Title VII and section 1983 claims and remanded the case to this Court. Alamo subsequently amended his complaint to add additional claims. The defendants have now filed a partial motion to dismiss addressing those newly added claims. For the reasons set forth herein, that motion [164] is denied.

**Background**

The following facts are taken from Alamo's fourth amended complaint and are accepted as true for the purposes of the present motion. Alamo, who is Puerto Rican, has worked for the Chicago Fire Department (CFD) since 2006. In 2009, Alamo was transferred to CFD Engine Company 55, which was commanded by Lieutenant Bliss. For the next two years Alamo experienced verbal and physical harassment from his fellow firefighters based on his race and national origin. He reported this harassment to Bliss on multiple occasions and filed a written complaint with his battalion chief without response.

1

In September 2011, Alamo was involved in a physical altercation with a fellow firefighter that was seemingly motivated by Alamo's race and national origin. Bliss witnessed the incident. Alamo initially called 911 for assistance, but declined to press charges on the request of a superior officer. Alamo was hospitalized the next day for chest pain, dizziness, and a migraine. He was diagnosed with a work-related chest contusion and work-related stress, as well as possible post-traumatic stress disorder (PTSD). Alamo subsequently followed up with his primary care physician, who diagnosed him with work-related anxiety, and ordered that he take a medical leave. Alamo reported his leave to the CFD Medical Section but was informed that his injury was not considered work-related because he had failed to report the incident while on duty. On several occasions during the course of his medical leave, CFD Medical Section ordered different engine companies to conduct well-being checks on Alamo at his residence. Alamo contends that these checks were harassing and embarrassing and were not conducted for other firefighters on medical leave.

On March 13, 2012, Alamo was informed that he was running out of medical leave time, and was directed to get a release order from his treating physician to return to full-duty status without restrictions. Alamo subsequently obtained authorization from his treating physician to return to work without authorization. However, when Alamo supplied that authorization he was then told that he also needed a prescription note authorizing a Functional Capacity Test. When Alamo received that prescription, he was next informed that he also was required to submit progress notes from his treating physicians. Alamo provided those notes, but was informed that he would also be required to submit medical records dating back to 2009 and to undergo further psychological and physical testing before being cleared for work.

On April 4, 2012, Alamo filed an EEOC charge and an Illinois Department of Human Rights complaint alleging discrimination and retaliation based on national origin and disability. Alamo subsequently underwent the first part of a two-part psychological test necessary to be cleared

2

for duty, but was unable, even with the intervention of counsel, to schedule the second part of the test or obtain any information from the CFD about what else was needed to return to work.

The next correspondence that Alamo received was a July 2012 letter explaining that he had exhausted his lay-up time without returning to work or separating from the CFD. The letter requested that he return to work, resign, or go on a leave of absence, and warned that if he did not comply by July 16, 2012, he would be designated as absent without authorized leave. Alamo requested to return to work but, notwithstanding that request, CFD stopped paying Alamo his salary and benefits.

In February 2013, CFD reinstated Alamo and reassigned him to Engine Company 81, located on the South Side of Chicago. Alamo, who lived on the Northwest side, contends that this inconvenient assignment was retaliatory; a fact confirmed by a Lieutenant who told Alamo that the assignment had occurred because Alamo had "misbehaved." Alamo was later transferred to the Third District O'Hare, Rescue One Firehouse, Tower Ladder 63. On his first day on the job, the Battalion Chief met with Alamo and two captains and warned Alamo that he had "heard about [Alamo's] reputation." Alamo continued to suffer from harassment on the job and disparate discipline and was warned that he was being watched closely by supervisors due to negative rumors about him. Alamo was also denied opportunities for training, transfer, or advancement.

On June 20, 2016, Alamo requested a meeting with his Battalion Chief and Lieutenant regarding an issue with a coworker. During that meeting, the Battalion Chief advised Alamo to go on medical leave to take care of some personal issues, and, per CFD policy, ordered an ambulance to transport Alamo to the hospital. While Alamo was being transported, his Battalion Chief and Lieutenant informed his coworkers that he suffered from PTSD and combat-related trauma.

Following Alamo's release from the hospital, he was authorized for medical leave until July 13, 2016. On July 14, Alamo reported to an appointment with the CFD Medical Director. At that

meeting, the Medical Director stated that "command personnel have issues with you and I am not ready to release you," and asked Alamo to submit a release from his medical provider. Alamo submitted the release, but the Medical Director concluded that it was insufficient and requested a second opinion. On September 22, 2016, Alamo attended an appointment with the Medical Section, where he was ordered to undergo further testing. On September 29, 2016, Alamo underwent a brief mental health evaluation. Despite providing a letter from his supervisor requesting his return to duty, the examining doctor decided that Alamo required a MRI and EEG.

On October 3, 2016, the Medical Director requested that Alamo sign a release for his medical records from the Veterans Administration. Alamo contacted his Union and filed a grievance based on his failure to be returned to duty. He also filed an Internal Affairs complaint against his Battalion Chief and Lieutenant for violating his medical privacy.

In December 2016, Alamo saw a neuropsychologist for additional testing at CFD's request. As a result of that testing, it was recommended that Alamo be declared unfit for duty. Alamo requested a second medical opinion, but that request was denied. On February 17, 2017, Alamo met with the Medical Director, who gave Alamo documents to request a reasonable accommodation. The neuropsychologist, however, refused to sign those documents. On May 19, 2017, the Medical Director informed Alamo that he had exhausted all of his available medical time. Alamo subsequently saw a VA neurologist, who rejected the neuropsychologist's testing results as subjective and invalid. Alamo subsequently returned to the neuropsychologist, who authorized his return to full duty. Notwithstanding Alamo's submission of that release to return to full duty, Alamo was subsequently informed that he must resign or go on unpaid medical leave. Alamo refused and was discharged.

Alamo filed the complaint in this action on June 4, 2012. He continued to litigate this case against the Chicago Fire Department, in this Court and in the Seventh Circuit Court of Appeals,

4

throughout the events alleged herein. On March 29, 2018, he filed the operative complaint, which added the allegations now at issue.

**Legal Standard**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the allegations. The allegations must contain sufficient factual material to raise a plausible right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 n.14, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Although Rule 8 does not require a plaintiff to plead particularized facts, the complaint must assert factual "allegations that raise a right to relief above the speculative level." *Arnett v. Webster*, 658 F.3d 742, 751–52 (7th Cir. 2011). When ruling on a motion to dismiss, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018).

**Discussion**

The City first contends that Alamo has failed to state a claim for disability discrimination in violation of the Americans with Disabilities Act (ADA). In order to state a claim for disability discrimination under the ADA, a plaintiff must allege facts showing (1) that he is disabled within the meaning of the ADA; (2) that he is qualified to perform the essential functions of the job, either with or without a reasonable accommodation; and (3) that he suffered an adverse employment action as a result of his disability. *E.E.O.C. v. Lee's Log Cabin, Inc.*, 546 F.3d 438, 442 (7th Cir. 2008).

Under the ADA, an individual is considered to be disabled if he has a physical or mental impairment that substantially limits one or more of his major life activities, if he has a record of such an impairment, or if he is regarded as having such an impairment. 42 U.S.C. § 12102(2). Alamo is proceeding on the basis that the City regarded him as having an impairment. Accordingly, Alamo must allege either that the City mistakenly believed he had an impairment that substantially limited a

major life activity or that the city mistakenly believed that an existing, non-limiting impairment substantially limited a major life activity. *Brunker v. Schwan's Home Serv., Inc.*, 583 F.3d 1004, 1008 (7th Cir. 2009).

The City contends that Alamo's pleadings lack desirable specificity. Alamo generally alleges that he suffered from PTSD, that his PTSD did not affect his ability to perform his duties, and that the City refused to return Alamo to work as a result of his PTSD. Alamo fails to make allegations linking specific decisions to his PTSD or establishing what substantial limitation he was believed to have as a result of his PTSD. Nevertheless, the level of specificity the City seeks is unnecessary. Alamo has plausibly alleged that he was placed on medical leave, that the City refused to return him from that leave due to his mental health, and that he was subsequently terminated as a result. On the whole, the allegations raise the right to relief "above the speculative level." The Court, moreover, is cognizant of the fact that, at this juncture, much of the information that the City seeks—such as why its agents would not restore Alamo from medical leave—is exclusively in the City's control. Indeed, the cases that the City relies on were summary judgment and trial rulings and are inapposite in this context.

The City also contends that Alamo's ADA claims must be dismissed because his complaint alleges mixed motives for his termination. An employer has mixed motives when an employer has both legitimate and illegitimate grounds for an employee's termination. *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 959 (7th Cir. 2010). When an employer has mixed motives for an employment decision, the employer can be held liable only if it would have made the same decision absent the illegal motive. *Id.* (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 242, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)). The City, however, argues that Alamo has failed to state a claim because he advances the mixed-motive theory that he was discriminated against both for his disability and for his race and national origin. The City has offered, and this Court is aware of, no authority

establishing that alleging multiple forms of illegal discrimination constitutes an improper mixed-motive theory. The City's argument, moreover, is plainly contrary to the alternative pleading provisions of Federal Rule of Civil Procedure 8. Accordingly, this Court disregards that conclusory argument and finds no basis for dismissing Alamo's ADA claims.[1]

The City next contends that Alamo has failed to state a claim for disability discrimination and retaliation under the Illinois Human Rights Act. Disability discrimination claims under IHRA are reviewed using the standards applicable to analogous federal claims. *Teruggi v. CIT Group/Capital Finance, Inc.*, 709 F.3d 654, 659 (7th Cir. 2013) (quoting *Luckett v. Human Rights Comm'n*, 569 N.E.2d 6, 14, 210 Ill.App.3d 169 (1989)). The City has set forth no independent basis for dismissing Alamo's disability discrimination claims under IHRA, and this Court therefore finds no basis for dismissing those claims in light of its analysis above.

Alamo also brings a claim for retaliation under IHRA based on the present case. The City contends that the filing of this case is too remote in time to support a retaliation claim. The cases that the City relies on, however, were all decided at summary judgment and were based on EEOC charges and other discrete events. *See, e.g., Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 616 (7th Cir. 2001); *Johnson v. Univ. of Wis.-Eau Claire*, 70 F.3d 469, 480 (7th Cir. 1995). The City has offered no authority suggesting that it is appropriate to dismiss a retaliation claim for failure to state a claim based solely on a substantial lapse of time between a plaintiff's protected activities and subsequent retaliatory conduct. Even if such authority existed this case has continued from 2012 until the present, and thus Alamo's participation in a protected activity has continued to the present. *See* 776 ILCS 5/6-101(A) (protecting individuals who file a complaint or testify, assist, or participate in an investigation, proceeding, or hearing). The protected activity at issue here is therefore nowhere near

---

[1]. Discrimination cases routinely assert multiple parallel theories illegal of discrimination, and the City has identified no actual authority supporting the legal theory it advances. Conclusory arguments such as this do nothing more than to waste judicial resources.

as remote as the City asserts. Accordingly, the City has offered no convincing basis for dismissing Alamo's IHRA claims.

The City next contends that Alamo's 42 U.S.C. § 1981 claims are improperly pled because section 1981 claims cannot be brought against a municipality. Alamo concedes as such, noting that claims to vindicate rights secured by section 1981 may be brought against municipalities under 42 U.S.C. § 1983. *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 731–33, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989).

In order to state a claim against a municipality under section 1983, a plaintiff must allege that a constitutional violation resulted from (1) an express policy that, when enforced, deprived the plaintiff of a constitutional right; (2) a widespread municipal practice that, although not officially authorized, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) that the plaintiff's alleged constitutional injury was caused by a person with final policy making authority. *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *McCormick v. City of Chicago*, 230 F.3d 319, 324–25 (7th Cir. 2000).

Alamo, in his response, asserts that his section 1981 race discrimination claim is premised on the city's failure to prevent Bliss from violating Alamo's civil rights and that his section 1981 retaliation claim is premised on the Medical Director's actions as a final policymaker on returning personnel decisions. The City, in response, conclusorily asserts that the plaintiff has failed to state a claim without providing any legal or factual analysis addressing the specific theories that the plaintiff has raised. Indeed, the City does not even identify the legal standards that apply to section 1983 claims premised on failure to supervise or on the acts of official policymakers. It is not this Court's job to construct the parties' arguments for them, and the Court accordingly concludes that any possible arguments for dismissal on this issue have been waived. *United States v. Alden*, 527 F.3d 653, 664 (7th Cir. 2008); *County of McHenry v. Insurance Co. of the West*, 438 F.3d 813, 818 (7th Cir. 2006).

Finally, the City contends that this Court must strike Alamo's prayer for punitive damages. It well established that punitive damages cannot be recovered against municipalities. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.E.2d 616 (1981). Alamo, however, concedes that he does not seek to recover punitive damages against the City, but instead seeks to recover them against Bliss. There is accordingly no basis for striking Alamo's prayer for punitive damages.

**Conclusion**

For the foregoing reasons, the City's partial motion to dismiss [164] is denied.

Date: 11/7/2018

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge