**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT G. ALAMO, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| vs. | ) | No. 12-cv-04327 |
| | ) | |
| CITY OF CHICAGO | ) | Judge Sharon Johnson Coleman |
| and CHARLIE BLISS, in his | ) | Magistrate Judge Sidney I. Schenkier |
| individual capacity, | ) | |
| | ) | |
| *Defendants*, | ) | |

**DEFENDANTS' AMENDED ANSWERS TO PLAINTIFF'S**
**FOURTH AMENDED COMPLAINT**

Defendant City of Chicago ("the City") and Charlie Bliss ("Bliss"), by their attorney

Edward N. Siskel, Corporation Counsel of the City of Chicago, submit their amended answers

and affirmative defenses to Plaintiff's Fourth Amended Complaint as follows:

**NATURE OF THE ACTION**

1.      This is a civil action for racial and/or national origin discrimination, retaliation,
and disability discrimination. Plaintiff brings this action pursuant to Title VII of the Civil Rights
Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"); the Americans With
Disabilities Act, 42 U.S.C. § 12117 ("the ADA"); 42 U.S.C. § 1983 ("Section 1983"); 42 U.S.C.
§ 1981, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981(a) ("Section 1981"); and
the Illinois Human Rights Act ("the IHRA"), 775 ILCS 5/101 *et seq.*

**ANSWER**:      **Defendants admit Plaintiff purports to bring suit against the City**

**under Title VII of the of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.**

**("Title VII"); the Americans with Disabilities Act, 42 U.S.C. § 12117 ("the ADA"), 42**

**U.S.C. § 1981, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981(a) ("Section**

**1981"); and the Illinois Human Rights Act ("the IHRA"), 775 ILCS 5/101 *et seq*..**

**Defendants further admit the Plaintiff purports to bring suit against Bliss under 42 U.S.C.**

**§ 1983 ("Section 1983").  Defendants admit that Plaintiff alleges racial and national origin**

discrimination, retaliation, and disability discrimination in his Fourth Amended

Complaint.  Defendants deny they engaged in any unlawful conduct in violation of Title

VII, Sections 1981 or 1983, or any other federal, state, or local laws.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

**ANSWER**:      **Defendants admits that this Court has jurisdiction over Plaintiff's claim.**

**The City denies it engaged in any wrongful conduct.**

3.      Venue is proper under 28 U.S.C. § 1391, because all of the parties reside in this
District and because all of the conduct complained of occurred within this District.

**ANSWER:**      **Defendants admit venue is proper.  The City denies it engaged in any**

**wrongful conduct. The City lacks knowledge or information sufficient to form a belief as to**

**the truth of Plaintiff's residency.**

## PARTIES AND OTHER INDIVIDUALS

4.      Plaintiff Alamo is a Latino citizen of Puerto Rican descent who worked as a
firefighter with the Chicago Fire Department ("CFD"). Alamo has worked for the CFD since
2006.

**ANSWER**:      **Defendants admit that personnel records, including a copy of Plaintiff's birth**

**certificate, indicate that Plaintiff was born in the United States of America, and Plaintiff**

**has identified his race/ethnicity as "Hispanic."  Plaintiff was hired to work as a Firefighter**

**for the CFD in 2006 and remained employed in this capacity until August 2017.**

**Defendants lack knowledge or information sufficient to form a belief regarding the truth of**

**the remaining allegations in paragraph 4.**

5.      At all times relevant to this complaint, Defendant the City of Chicago is a
municipal corporation in Cook County, Illinois, organized under the laws of the State of Illinois.

**ANSWER**:      **Defendants admit the allegations in paragraph 5.**

2

6.      At all times relevant to this complaint, Defendant Bliss is a Lieutenant on Engine Company 55 and Alamo's immediate supervisor. Bliss is sued in his individual capacity for his unlawful acts under color of law.

**ANSWER**:      **Defendants admit that Bliss served as a CFD Lieutenant EMT assigned to Engine Company 55 from October 2007 to September 2013. Defendant Bliss admits that Plaintiff purports to sue him in his individual capacity and that his actions were taken under color of law. Defendants deny that Bliss engaged in unlawful conduct. Defendant City lacks knowledge or information sufficient to form a belief regarding the truth of whether all of Defendant Bliss' actions were taken under color of law as Plaintiff fails to identify those acts. Defendants lack knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in paragraph 6 because the phrases "at all times relevant to this complaint" and "immediate supervisor" are vague and ambiguous.**

7.      At all times relevant to this complaint, Patrick Stephan ("Stephan") [sic] is a Fire Captain on Truck 44 of Engine Company 55.

**ANSWER**:      **Defendants deny the allegations in paragraph 7. Defendants affirmatively state Stefan was a Fire Captain assigned to Truck 44 of Engine Company 55 from October 2007 to his retirement November 14, 2012.**

8.      At all times relevant to this complaint, Sylvia Tienda ("Tienda") is the CFD Medical Commander. As such, Tienda has authority over which firefighters can return for duty after taking medical leave.

**ANSWER**:      **Defendants deny the allegations in paragraph 8. Defendants affirmatively state Tienda was employed as the CFD Medical Commander from March 2011 to June 2012.**

9.      At all times relevant to this complaint, Dr. Isaac Morcos ("Dr. Morcos") is an occupational health physician with the CFD. As such, Dr. Morcos has authority for deciding which firefighters can return for duty after taking medical leave.

**ANSWER**:     **Defendants deny the allegations in paragraph 9.  Defendants affirmatively**

**state Dr. Morcos worked as an occupational health physician with the CFD until October**

**2013.**

10.     At all times relevant to this complaint, Dr. Hugh Russell ("Dr. Russell") is the Medical Director of the CFD. As such, Dr. Russell has authority to approve which firefighters can return for duty after taking medical leave.

**ANSWER**:     **Defendants deny the allegations in paragraph 10.  Defendants affirmatively**

**state Dr. Russell was the CFD Medical Director until his retirement in December 2012.**

11.     At all times relevant to the complaint, Gary Kuykendall ("Kuykendall") is a Battalion Chief at Rescue One Station at O'Hare Airport and one of Alamo's supervisors.

**ANSWER**:     **Defendants deny the allegations in paragraph 11. Defendants affirmatively**

**state Kuykendall was a CFD Battalion Chief and a supervisor in Plaintiff's chain of**

**command and was assigned to Rescue One Station located at O'Hare Airport.**

12.     At all times relevant to this complaint, Dr. William Wong ("Dr. Wong") was and is the Medical Director of the CFD. As such, Dr. Wong has authority to approve which firefighters can return for duty after taking medical leave.

**ANSWER**:     **Defendants admit Dr. Wong is and has been employed as the CFD Medical**

**Director since January 2014.  Defendants deny the remaining allegations in paragraph 12.**

13.     At all times relevant to this complaint, Dr. Lisa A. Rone ("Dr. Rone") is a mental health professional who worked with the CFD. As such, Dr. Rone has authority for deciding which firefighters can return for duty after taking medical leave.

**ANSWER**:     **Defendants admit Dr. Rone is a mental health professional who has worked**

**with the CFD.  Defendants deny the remaining allegations in paragraph 13.**

## PROCEDURAL BACKGROUND

14.     On April 4, 2012, Alamo timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging national origin and disability discrimination and retaliation. A true and correct copy of that Charge is attached as **Exhibit A**.

**ANSWER**:    **Defendants admit Plaintiff purportedly filed a Charge of Discrimination with**

**the EEOC on or about April 4, 2012.  Defendants admit the Charge of Discrimination**

**alleges national origin, disability discrimination and retaliation.  Defendants admit the**

**April 4, 2012 Charge is attached as Exhibit A to the Fourth Amended Complaint.**

**Defendants lack knowledge or information sufficient to form a belief regarding the truth of**

**the remaining allegations in paragraph 14.**

15.    On May 2, 2013, the EEOC requested that the U. S. Department of Justice, Civil Rights Division, issue Alamo a Notice of Right to Sue entitling him to institute a civil action within 90 days of the date of receipt of said Notice. A true and correct copy of that request is attached as **Exhibit B**. The DOJ issued a Notice shortly thereafter.

**ANSWER**:    **Defendants admit a copy of the Transmittal to Department of Justice of**

**Request for Notice of Right to Sue dated March 29, 2013 is attached as Exhibit B to the**

**Fourth Amended Complaint.  Defendants lack knowledge or information sufficient to form**

**a belief regarding the truth of the remaining allegations in paragraph 15.**

16.    On July 18, 2013, Alamo filed his Second Amended Complaint in the instant action, asserting Title VII race discrimination, Section 1981, and Section 1983 claims. Consequently, Alamo fulfilled the requirement that he file suit within 90 days of receiving the initial EEOC Notice of Right to Sue.

**ANSWER**:    **Defendants admit Plaintiff filed his Second Amended Complaint on July 18,**

**2013, wherein he alleged race discrimination under Title VII, Section 1981, and Section**

**1983.  Defendants lack knowledge or information sufficient to form a belief regarding the**

**truth of the remaining allegations in paragraph 16.**

17.    On August 1, 2014, Alamo filed his Third Amended Complaint, asserting, for the first time ADA, Title VII retaliation, Title VII national origin discrimination, and state tort claims and excluding the Section 1981 and Title VII race discrimination claims. Defendants then moved to dismiss the new complaint on September 8, 2014, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

**ANSWER**:    **Defendants admit the allegations in paragraph 17.**

18.     On July 28, 2015, this Court granted Defendants' motion to dismiss in its entirety, dismissing all of Alamo's federal claims with prejudice and declining to exercise supplemental jurisdiction over his state law claims.

**ANSWER**:     **Defendants admit the allegations in paragraph 18.**

19.     On August 28, 2015, Alamo timely filed a Notice of Appeal before the Seventh Circuit on the Title VII and Section 1983 claims. He did not appeal the dismissal of the ADA and state law claims.

**ANSWER**:     **Defendants admit the allegations in paragraph 19.**

20.     On July 20, 2017, the Seventh Circuit reversed this Court's dismissal and remanded the case back for further proceedings on all Counts appealed.

**ANSWER**:     **Defendants admit the allegations in paragraph 20.**

21.     On October 17, 2016, Alamo timely filed a new complaint with the Illinois Department of Human Rights for disability discrimination and retaliation. A true and correct copy of that Charge is attached as **Exhibit C**.

**ANSWER**:     **Defendants admit Plaintiff purportedly filed a Charge of Discrimination with the Illinois Department of Human Rights ("IDHR") on or about October 17, 2016. Defendants admit the October IDHR Charge alleges only disability discrimination and retaliation. Defendants admit a copy of that IDHR Charge is attached as Exhibit C to the the Fourth Amended Complaint. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 21.**

22.     The IDHR issued a Notice of Dismissal for Lack of Substantial Evidence on January 2, 2018. A true and correct copy of that Notice is attached as **Exhibit D**.

**ANSWER**:     **Defendants admit the allegations in paragraph 22.**

23.     This Fourth Amended Complaint is being filed within 90 days of his receipt of that Notice.

**ANSWER**:     **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23.**

24.     On August 8, 2017, Alamo was officially discharged from the CFD. On September 29, 2017, Alamo timely filed a second Charge of Discrimination with the EEOC alleging race and national origin discrimination, disability discrimination, and retaliation, including his unlawful termination on account of his race/disability and for engaging in protected activity. A true and correct copy of that Charge is attached as **Exhibit E**.

**ANSWER**:     **Defendants admit Alamo was discharged from the CFD on August 7, 2017.**

**Defendants deny Alamo filed a Charge of Discrimination with the EEOC on September 29,**

**2017.  Defendants admit Alamo alleged race and national origin discrimination, disability**

**discrimination, and retaliation, and claimed his termination was unlawful based on his race**

**and/or disability in his EEOC Charge of Discrimination No. 440-2018-00047, which was**

**filed on or about October 3, 2017 and a copy is attached to the Fourth Amended Complaint**

**as Exhibit E.**

25.     On February 14, 2018, the U. S. Department of Justice, Civil Rights Division, issued Alamo a Notice of Right to Sue regarding his second leave and eventual termination, entitling him to institute a civil action within 90 days of the date of receipt of said Notice. A true and correct copy of that Notice is attached as **Exhibit F**.

**ANSWER**:     **Defendants admit that a Notice of Rights to Sue Within 90 Days regarding**

**EEOC Charge No. 440-2018-00047 was issued to Plaintiff by the U. S. Department of**

**Justice, Civil Rights Division on or about February 14, 2018.  Defendants admit a copy of**

**the Notice is attached as Exhibit C to the Fourth Amended Complaint.**

26.     This Fourth Amended Complaint is being filed within 90 days of Alamo's receipt of the EEOC Notice of Right to Sue.

**ANSWER**:     **Defendants lack knowledge or information sufficient to form a belief as to the**

**truth of the allegations in paragraph 26.**

## ALLEGATIONS OF FACT

27.     In or around 2009, Alamo was transferred from CFD Engine Company 89 to CFD Engine Company 55. When Alamo joined Engine Company 55, he met with his superior officer, Lieutenant Bliss. At that time, Alamo told Bliss about the discrimination Alamo had faced when

he was with Engine Company 89. Bliss told Alamo that he should not worry about it, and that he should consider Engine Company 55 a fresh start.

**ANSWER**: **Defendants admit the first and second sentences of paragraph 27. Defendants deny the allegations in the third sentence of paragraph 27. Defendants admit that Bliss told Plaintiff that Plaintiff would have a "second chance" when he began with Engine Company 55, but lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 27.**

28. However, shortly after he started with Engine Company 55 and continuing throughout 2010 and 2011, Alamo was harassed and verbally abused by other firefighters. Alamo informed Bliss on numerous occasions, including in July, August, and November of 2010, and April, July, and August of 2011, of the harassment that he endured, including, but not limited to, name-calling, derogatory and racist comments. Alamo was called a "spic" and a "fucking Puerto Rican," and other firefighters used the term "Nigger" around the firehouse.

**ANSWER**: **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first and last sentences of paragraph 28. Defendants deny the remaining allegations in paragraph 28, and further deny they engaged in any alleged harassment or discrimination in violation of any federal, state or local law.**

29. Alamo filed a harassment complaint with Bliss and Battalion Chief Curt Annis about the harassment he was experiencing with Engine Company 55, including, but not limited to, being detailed excessively compared to his colleagues, several incidents of co-workers stealing or throwing out Alamo's food at the firehouse, and an incident with firefighter Dan Sheahan, who directed racist and derogatory comments regarding Alamo's Puerto Rican national origin and physically assaulted Alamo in or around March 2011. Despite Alamo's complaints, Bliss did nothing to address this intimidating, hostile, and offensive work environment. In addition, other, non-Latino firefighters were not subjected to this harassment.

**ANSWER**: **Defendants deny the allegations in the first two sentences of paragraph 29. Defendants further deny they engaged in or had knowledge of any harassment of Firefighters of any race, including Plaintiff, at Engine Company 55.**

30.     On September 13, 2011, Alamo reported to work but was not feeling well due to allergies and informed Bliss as well as several colleagues. Around 8:30 p.m., Alamo notified Bliss and firefighter Korba that he would be in the television room and asked them to come get him if the bell rang for Engine 55 since he was not feeling well and might be sleeping.

**ANSWER**:     **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30.**

31.     At around 9:45 p.m., Stephan [sic], who was assigned to a different truck than Alamo and was not Alamo's immediate supervisor, suddenly woke Alamo up, yelled profanities at him, called him names, and said, among other things, "I don't like your kind, you better put in transfer and get out of this firehouse because I don't want you here." Stephan [sic] than began chest bumping Alamo, used more profanity and derogatory terms, and again threatened physical violence. Alamo became upset and walked away since he felt threatened.

**ANSWER**:     **Defendants admit Captain Patrick Stefan was assigned to a different truck than Plaintiff and was not Plaintiff's immediate supervisor. Defendant Bliss lacks knowledge and information sufficient to form a belief as to the truth of the allegations in paragraph 31. Defendant City lacks knowledge and information sufficient to form a belief as to Plaintiff's state of mind as alleged in the last sentence of paragraph 31. Defendant City denies the remaining allegations in paragraph 31.**

32.     After Engine Company 55 returned from a run, the firehouse bell rang to call all firefighters to the apparatus floor. Alamo came downstairs and was pushed against the wall by Stephan [sic]. Bliss saw this physical altercation and asked what was going on. Alamo told Bliss that he could not handle Stephan's [sic] harassment and violence any longer and then left the firehouse to call 911 for assistance.

**ANSWER**:     **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in sentence one and the allegation in sentence four of paragraph 32 that Plaintiff "left the firehouse to call 911 for assistance." Defendants deny the remaining allegations in paragraph 32.**

33.     When police officers arrived, Alamo explained what had happened and told the officers that he wanted Stephan [sic] arrested.

**ANSWER**:     **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 33.**

34.     Shortly thereafter, Alamo received a call from Chief Steven Chikerotis, the Fire Chief assigned to Engine 42 Headquarters, who asked Alamo to wait for him to arrive before doing anything. Alamo explained to Chief Chikerotis that he had already called 911 and was going to proceed with filing charges, but Chief Chikerotis pleaded with Alamo to wait until he arrived. When he arrived, Chief Chikerotis repeatedly asked Alamo not to press charges against Stephan and to keep the incident in house so as to resolve the issue without police involvement. Chief Chikerotis promised that if Alamo did not press charges, Chikerotis would help him with the national origin and racial harassment as well as the intimidating, hostile, and offensive work environment Alamo had been enduring at the firehouse.

**ANSWER**:     **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 34, as Steven Chikerotis is no longer employed with the City.**

35.     Based on Chief Chikerotis' request, Alamo did not press charges. However, Alamo asked the responding police officers to make sure they documented the incident fully and accurately. Alamo later learned that the responding police officers held a private meeting with Stephan, Chief Chikerotis, Battalion Chief Curt Annis and more of Alamo's co-workers, and then subsequently filed an inaccurate police report.

**ANSWER**:     **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 35.**

36.     After Alamo had completed his interview with the police officers, Chief Chikerotis took Alamo to Engine Company 42, which is located at a different firehouse. Once there, Chief Chikerotis privately asked Alamo, "What can we do to make this all go away?" Alamo told him that he wanted the CFD "to do the right thing." Chief Chikerotis seemed angered at Alamo's comments and told Alamo that he was done talking to him.

**ANSWER**:     **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 36, as Steven Chikerotis is no longer employed with the City.**

37.     On September 14, 2011, at approximately 6:00 a.m., Alamo was relieved of his duty by firefighter Frost. Alamo took a bus to get home but got off after a couple blocks because he had terrible chest pain, dizziness, and a migraine. Alamo called a friend to pick him up and the friend took him to St. Joseph Hospital.

**ANSWER**:     **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 37.**

38.     Alamo arrived at the emergency room and explained to the doctor the events from the preceding day, noting that he was pushed multiple times, chest-bumped, and was the victim of battery. The doctor diagnosed him with a work-related chest contusion, stress, and possible post-traumatic stress disorder. The doctor also directed Alamo to follow-up with his primary care provider.

**ANSWER**:     **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 38.**

39.     On September 15, 2011, Alamo met with his primary care doctor, Dr. Carlos Reyes, and informed him of what happened on September 13 and 14, 2011. Dr. Reyes referred Alamo to a psychologist and a psychiatrist and diagnosed Alamo with work-related anxiety.

**ANSWER**:     **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 39.**

40.     Also on September 15, 2011, Alamo reported to Captain Al Kiefer of Engine Company 55 that his doctor put him on medical lay-up and provided Kiefer with the documents from his doctors and from the hospital emergency room.

**ANSWER**:     **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 40.**

41.   Alamo then reported to the CFD Medical Section, where he was informed by Tienda that the CFD would not consider Alamo's injury work-related because he failed to report the injury while he was on duty. Alamo provided Tienda with all of the medical documents that described the incidents from his workplace on September 13th and explained that he was the victim of workplace violence and discrimination. Despite this explanation, Tienda refused to consider Alamo's injuries work-related and said that she would not authorize any payment to the hospital or treating physicians.

**ANSWER**:     **Defendant City admits Tienda informed Alamo that she did not think CFD would consider Alamo's injuries duty-related because he failed to report the injury while**

he was on duty. **Defendant City denies the remaining allegations in paragraph 41.**

**Defendant Bliss lacks knowledge or information sufficient to form a belief as to the truth of**

**the allegations in paragraph 41.**

42.     Alamo went on doctor-ordered medical leave because of the workplace incident
with Stephan on September 13, 2011.

**ANSWER**:     **Defendant City admits Plaintiff requested and was placed on medical lay-up**

**status beginning September 15, 2011. Defendant City denies the remaining allegations in**

**paragraph 42. Defendant Bliss lacks knowledge or information sufficient to form a belief**

**as to the truth of the allegations in paragraph 42.**

43.     On several occasions over the course of Alamo's medical leave, the CFD Medical
Section ordered different engine companies to conduct well-being checks on Alamo at his
residence. These well-being checks, however, were harassing in nature and, on at least one
occasion, the firefighters damaged Alamo's property and embarrassed Alamo in front of his
friends and neighbors. On information and belief, other firefighters who took medical leaves of
absence were not harassed by the Medical Section and did not receive disruptive well-being
checks that caused damage to an employee's property.

**ANSWER**:     **Defendant City admits the CFD medical section staff conducted well-being**

**checks on Plaintiff during the course of his medical lay-up status pursuant to the applicable**

**Chicago Fire Department rules and regulations, as set forth in its General Order.**

**Defendant City denies it harassed Plaintiff or any firefighters on medical leaves of absence.**

**Defendant Bliss lacks knowledge or information sufficient to form a belief as to the truth of**

**the allegations in paragraph 43.**

44.   On March 13, 2012, Alamo was informed by Tienda that he was running out of
medical leave time, and she directed him to get a release order from his treating physician to
return to full-duty status without restrictions.

**ANSWER**:     **Defendantlack knowledge or information sufficient to form a belief as to the**

**truth of the allegations in paragraph 44, as Sylvia Tienda is no longer employed with the**

**City.**

45.  On March 14, 2012, Alamo met with his treating physician, Dr. Martinez, who authorized Alamo to return to work without restriction.

**ANSWER**:  **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 45.**

46.  On March 16, 2012, Alamo gave Tienda the authorization to work from Dr. Martinez. Tienda then notified Alamo that, in addition to the authorization, he also needed a prescription note authorizing him for a Functional Capacity Evaluation. Alamo received such a prescription from Dr. Martinez and forwarded it to Tienda on March 19, 2012.

**ANSWER**:  **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 46, as Tienda is no longer employed with the City.**

47.  On March 21, 2012, Alamo followed up with the CFD Medical Section and was told by Dr. Morcos that the Medical Section "administration" now also needed progress notes from his treating physicians before it would release him to go back to work. This request had not been mentioned to Alamo in his previous conversations with Tienda. Alamo had his treating physicians, Dr. Martinez, Dr. Reynes, and Dr. Thomas Brennan all forward on their progress notes on March 22, 2012 and on March 26, 2012.

**ANSWER**:  **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 47, as Dr. Morcos and Tienda are no longer employed with the City.**

48.  On March 26, 2012, Tienda confirmed that she had received all the medical notes from Alamo's treating physicians. She did not ask Alamo for any other information nor inform him that he needed to provide anything further. Dr. Morcos and Dr. Russell also did not ask Alamo for any further information at this time.

**ANSWER**:  **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 48, as Dr. Morcos, Dr. Russell, and Tienda are no longer employed with the City.**

49.  On March 26, 2012, Alamo contacted his Union, Local 2, and met with his union representative regarding why the CFD would not allow him to return to work when he had been cleared by his treating physicians

**ANSWER**:     **Defendants lack knowledge or information sufficient to form a belief as to the**

**truth of the allegations in paragraph 49.**

50.     On March 30, 2012, Alamo filed an inquiry with Tienda about his work status and requested CFD's reasons for keeping him on leave when he was authorized by his doctors to return to work. Alamo received no response to this inquiry.

**ANSWER**:     **Defendants lack knowledge or information sufficient to form a belief as to the**

**truth of the allegations in paragraph 50 because the phrase "filed an inquiry" is vague and**

**ambiguous.**

51.     On April 4, 2012, Alamo filed an EEOC charge regarding the CFD's discriminatory and retaliatory treatment. He also filed a complaint with the Illinois Department of Human Rights for national origin discrimination and discrimination against a service-connected disability that does not interfere with the duties of a firefighter.

**ANSWER**:     **Defendants admit that on or about April 4, 2012, Plaintiff purportedly filed**

**Charge No. 440-2012-03052 with the EEOC claiming discrimination and retaliation based**

**on a disability, and discrimination and retaliation based on his national origin, Puerto**

**Rican.  Defendants deny that CFD discriminated or retaliated against Plaintiff, and deny**

**the remaining allegations in paragraph 51.**

52.     Tienda finally called Alamo on April 3, 2012 and told him that Dr. Morcos was was now requesting medical records for Alamo dating back to 2009, which was two years prior to the assault on Alamo at the firehouse and wanted Alamo to undergo further psychological and physical testing before clearing Alamo for work.

**ANSWER**:     **Defendants lack knowledge or information sufficient to form a belief as to the**

**truth of the allegations in paragraph 52.**

53.     On April 19, 2012, Tienda scheduled Alamo for psychological testing with Dr. James Cavanaugh on May 1 and May 24, 2012. Alamo submitted to this testing on May 1, 201[sic] and was told by the doctor's office that CFD would be in touch with Alamo to schedule the second part of the test because the May 24, 2012, date had to be rescheduled.

**ANSWER**: **Defendant City admits Plaintiff was scheduled for psychological testing with Dr. James Cavanaugh. Defendant City further admits Plaintiff submitted to the scheduled psychological testing with Dr. Cavanaugh. Defendant City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 53. Defendant Bliss lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 53.**

54. On May 8, 2012, Dr. Russell asked Alamo to turn over additional medical records dating back several years. On May 14, 2012, Alamo, through counsel, sent a letter to Dr. Russell seeking clarification regarding the necessity of these additional medical records and inquiring as to when the second part of the psychological testing with Dr. Cavanaugh would take place.

**ANSWER**: **Defendant City admits Dr. Russell sent a letter to Plaintiff dated May 9, 2012 requesting additional medical records. Defendant City admits that it received a letter from Plaintiff's attorney, Terence J. Moran, dated May 14, 2012, wherein Plaintiff's attorney stated he refused to release the requested medical records. Defendant City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 54. Defendant Bliss lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 54.**

55. Over the course of the ensuing month, Alamo's counsel called the Medical Section several times and sent letters to Tienda and Medical Section Commander Edgar Ignacio seeking clarification as to what else Mr. Alamo needed to provide in order to return to work. Despite several attempts to contact Tienda and Ignacio, Alamo received no response to his clarification inquiries.

**ANSWER**: **Defendant City admits Plaintiff's counsel sent a letter dated May 14, 2012, wherein Plaintiff's attorney Terence J. Moran stated he refused to release the requested medical records to the Chicago Fire Department. Defendants City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 55 because Tienda is no longer employed with the City. Defendant Bliss lacks**

knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 55.

56.     On or about July 3, 2012, CFD Deputy Commissioner of Human Resources
Adrianne Bryant sent Alamo a letter explaining that he had exhausted his lay-up time and had
not returned to work nor signed paperwork separating from the CFD. The letter requested that
Alamo either return to work, resign, or go on a leave of absence. The letter further stated that if
Alamo did not comply with the request by July 16, 2012, his employment status would be
designated as "absent without authorized leave." Alamo's counsel sent a letter to Bryant on July
11, 2012, requesting that Alamo be allowed to return to work.

**ANSWER**:     **Defendant City admits CFD Deputy Commissioner of Human Resources,**

**Adrianne Bryant, sent Plaintiff a letter dated July 3, 2012, but denies that the content of**

**the letter is accurately quoted verbatim in the first three sentences of paragraph 56.**

**Defendant City admits it received a letter from Plaintiff's attorney addressed to Adrianne**

**Bryant dated July 11, 2012, but denies that it is accurately quoted verbatim in the fourth**

**sentence of paragraph 56.  Defendant Bliss lacks knowledge and information sufficient to**

**form a belief as to the truth of the allegations in paragraph 56.**


57.     On or around July 1, 2012, the CFD stopped paying Alamo his salary and stopped
his benefits due to its refusal to allow Alamo to return to work. On information and belief, other,
non-Latino firefighters have not been subjected to the hurdles, obstacles, and challenges in their
attempts to return to work after a medical leave of absence, as detailed above. Further, on
information and belief, other firefighters who did not file complaints about discrimination in the
workplace were not subjected to these hurdles, obstacles, and challenges when returning to work.

**ANSWER**:     **Defendants deny the allegations in the first sentence of paragraph 57**.

**Defendant City admits that it does not subject any firefighters, including Plaintiff, to**

**hurdles, obstacles or challenges in their attempts to return to work after a medical leave**

**and, therefore, deny the remaining allegations of paragraph 57.**

58.     After more than a seven-month delay with no pay or benefits, Alamo was finally
reinstated as a firefighter on February 19, 2013, and reassigned to Engine Company 81, located
on the far South Side of Chicago. Alamo lived on the Northwest side, and his commute home

after a shift could be as long as 2 1/2 hours. This reassignment was retaliatory, as there were other firehouses available that would not require such a long commute. Alamo was told by Lieutenant Michael Daniels that the assignment was because he "misbehaved."

**ANSWER**:     **Defendant City admits Plaintiff was reinstated as a Firefighter on or about February 19, 2013 and was assigned to Engine Company 81 from February 28, 2013 to March 16, 2015. Defendant City admits Engine Company 81 is located at 10458 S. Hoxie Avenue. Defendant City denies Plaintiff's assignment to Engine Company 81 was retaliatory, and denies the remaining allegations in paragraph 58. Defendant Bliss lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 58.**

59.     Alamo was later transferred to Third District O'Hare, Rescue One Firehouse, Tower Ladder 63, where he continued to suffer an intimidating, hostile, and offensive work environment. His first day at the station, Battalion Chief Gary Kuykendall pulled him into his office and warmed [sic] him, "I heard about your reputation." Captain Phillip Prestia and Captain Carmelita Wiley-Earls were also present at the meeting.

**ANSWER**:     **Defendant City admits Plaintiff was assigned to the Third District, Rescue One Firehouse, Tower Ladder 63 located at O'Hare Airport. Defendant City admits Battalion Chief Gary Kuykendall met with Alamo on his first day of his assignment at Tower Ladder 63, and admits Captain Phillip Prestia and Captain Carmelita Wiley-Earls were also present at the meeting. Defendant City denies the remaining allegations of paragraph 59. Defendant Bliss lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 59.**

60.     Additional incidents of hostile work environment included, but are not limited to, name-calling and derogatory comments, the theft of personal items (including a laptop computer), damage to Alamo's vehicle while parked in the firehouse lot, tampering with his protective equipment, and false accusations of misconduct.

**ANSWER**:     **Defendant City denies the allegations in paragraph 60, and further denies it**

**engaged in discrimination or retaliation against Plaintiff in violation of any federal, state or**

**local laws.  Defendant Bliss lacks knowledge or information sufficient to form a belief as to**

**the truth of the allegations in paragraph 60.**

61.     Alamo also continued to suffer discriminatory treatment. For example, on October 16, 2015, Alamo and firefighter Clinton both reported to work late at Rescue One Station. Alamo was given an AWOL charge for reporting late; Clinton, however, was not charged. On a separate occasion, while temporarily assigned to Engine Company 70, Alamo was harassed by Captain Jerry Ivack for wearing headphones while working out—even though he was on his personal time. Ivack also approached Alamo and told him that he had heard very negative rumors about him and that he would have his eyes "peeled" on him while Alamo was assigned to his company.

**ANSWER**:     **Defendant City admits Plaintiff was issued a written reprimand for being**

**AWOL on August 15, 2015.  Defendant City denies the remaining allegations in paragraph**

**61, and denies it discriminated against or harassed Plaintiff in violation of any federal, state**

**or local laws.  Defendant Bliss lacks knowledge or information sufficient to form a belief as**

**to the truth of the allegations in paragraph 61.**

62.     In addition, Alamo was denied career advancement opportunities. For example, on August 4, 2014, Alamo was denied a requested temporary transfer to the CFD's Office of Fire Investigations ("OFI"). On March 24, 2015, Alamo was denied his request for OFI certification. And on May 5, 2015, Alamo was denied education leave to attend a course to become a licensed Fire Investigator and was forced to use vacation time instead.

**ANSWER**:     **Defendant City denies the allegations in paragraph 62.  Defendant Bliss lacks**

**knowledge or information sufficient to form a belief as to the truth of the allegations in**

**paragraph 62.**

63.   Throughout this time period, Alamo made numerous verbal and written complaints regarding discrimination and retaliation. His complaints resulted in further retaliation.

**ANSWER**:    **Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of paragraph 63 because the phrase "throughout this time period" and the term "numerous" is vague and ambiguous. Defendants deny the remaining allegations in paragraph 63, and deny they retaliated against Plaintiff in violation of any federal, state or local laws.**

64.    On June 20, 2016, while on duty at Rescue One Station, Alamo requested a meeting with his Battalion Chief Gary Kuykendall and Lieutenant David Bernicky regarding an issue with a co-worker. During this meeting, Alamo was advised by Kuykendall to go on medical leave to take care of some personal matters. Kuykendall ordered that an ambulance transport him to the hospital per CFD policy, though Alamo was not injured or ill.

**ANSWER**:    **Defendant City admits Kuykendall and Bernicky met with Alamo on or about June 20, 2016 to discuss an incident involving a co-worker.  Defendant City denies the remaining allegations in paragraph 64.  Defendant Bliss lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 64.**

65.    Alamo was later informed by his immediate supervisor, Captain Carmelita Wiley-Earls, that during his transport to the hospital, Kuykendall and Lieutenant Bernicky called a company meeting, where without Alamo's consent or knowledge, they disclosed Alamo's personal, health, and family issues to his co-workers, including details about PTSD and combat-related trauma.

**ANSWER**:    **Defendants lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 65.**

66.    Following Alamo's release from the hospital, CFD Medical Section Director Dr. Wong authorized medical leave for Alamo until July 13, 2016.

**ANSWER**:    **Defendant City admits Plaintiff was on medical lay-up beginning June 20, 2016.   Defendant City denies the remaining allegations in paragraph 66.  Defendant Bliss lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 66.**

67.     On July 14, 2016, Alamo returned to the CFD Medical Section for an appointment with Dr. Wong and requested to return to duty. Dr. Wong told Alamo during this appointment that "command personnel have issues with you and I am not ready to release you." Dr. Wong also instructed Alamo to provide and submit a release note from his medical provider.

**ANSWER**:     **Defendant City admits Plaintiff reported to the CFD Medical Division on July 14, 2016, at which time he met with CFD Medical Director Dr. Wong. Defendant City admits Plaintiff requested to return to duty. Defendant City admits the allegations in the last sentence of paragraph 67. Defendant City denies the allegations in sentence two of paragraph 67. Defendant Bliss lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 67.**

68.     On July 15, 2016, Alamo obtained and submitted a medical release from his treating psychologist, Dr. Brian McLaughlin, which declared him fit to return to duty. Shortly thereafter, he met with Dr. Wong, and Dr. Wong stated that Alamo's medical release was not sufficient and wanted a second opinion.

**ANSWER**:     **Defendant City admits the CFD Medical Division received a note from Dr. McLaughlin dated July 15, 2016 with the recommendation that Plaintiff is "capable of a safe and effective job performance as a Firefighter." Defendant City lacks knowledge sufficient lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 68 because the phrase "shortly thereafter" is vague and ambiguous. Further answering, Defendant City states Plaintiff met with Dr. Wong on August 1, 2016 for a follow-up appointment, at which time he was informed that he needed a fitness for duty evaluation and was asked to sign a medical release of information, but declined to do so. Defendant Bliss lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 68.**

69.     On September 22, 2016, Alamo attended his scheduled appointment with the Medical Section and was ordered by Dr. Wong to undergo further medical evaluations and testing.

**ANSWER**:     **Defendant City admits Plaintiff attended a scheduled appointment with the CFD Medical Section on September 22, 2016, and was presented with an appointment notification form to see Dr. Lisa Rone on September 28, 2016.  Defendant City denies the remaining allegations in paragraph 69.  Defendant Bliss lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 69.**

70.     Alamo met with Dr. Lisa Rone on September 29, 2016, for a brief mental health evaluation. Alamo provided Dr. Rone with a letter from his supervisor, Captain Wiley-Earls, recommending his return to duty. To Alamo's knowledge, this letter was ignored. Following the evaluation, Dr. Rone sent an email to Dr. Wong requiring Alamo to undergo an MRI and EEG.

**ANSWER**:     **Defendant City denies Plaintiff met with Dr. Rone on September 29, 2016, but admits he met with Dr. Rone on September 28, 2016.  Defendant City admits Plaintiff provided a letter from Captain Carmelita Wiley-Earls to the CFD Medical Section recommending his return to duty.  Defendant City admits Dr. Rone informed Dr. Wong that she was recommending he undergo an MRI and EEG.  Defendant City lacks knowledge and information sufficient to admit or deny the remaining allegations in paragraph 70.  Further answering, Defendant City states Plaintiff was scheduled for a MRI on October 19, 2016 and an EEG on October 26, 2016.  Defendant Bliss lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 70.**

71.     On October 3, 2016, Dr. Wong requested that Alamo sign a summary request to release his medical records from the Veterans Administration. On the grounds that his prior military service record was not relevant to Dr. Wong's evaluation of his fitness to perform of his firefighter duties, Alamo declined Dr. Wong's request. At this point, Alamo had been performing his job and duties for 11-plus years without any restrictions or medical accommodations, and nothing had changed to warrant the CFD's request. Alamo also informed Dr. Wong of his objections to the series of medical exams he was being forced to undergo.

**ANSWER**:     **Defendant City admits Dr. Wong requested Plaintiff sign a release for his treatment records maintained by the Veterans Administration, and further admits Plaintiff**

**declined to sign the release and objected to any additional medical examinations.**

**Defendant City denies that CFD's request for the release of his medical records was not**

**warranted, and denies the remaining allegations in paragraph 71.   Defendant Bliss lacks**

**knowledge or information sufficient to form a belief as to the truth of the allegations in**

**paragraph 71.**

72.     Due to the CFD Medical Section's lack of cooperation, Alamo contacted his Union and filed a grievance for failure to be returned to duty. Further, on November 5, 2016, Alamo filed a complaint with the CFD's Internal Affairs division against Kuykendall and Lieutenant Bernicky for violation of his medical privacy.

**ANSWER**:     **Defendant City admits Plaintiff filed a grievance for failure to be returned to**

**duty.  Defendant City admits Plaintiff filed a complaint with CFD Internal Affairs Division**

**against Kuykendall and Bernicky violation of medical privacy.  Defendant City denies the**

**remaining allegations in paragraph 72.  Defendant Bliss lacks knowledge or information**

**sufficient to form a belief as to the truth of the allegations in paragraph 72.**

73.     On December 15, 2016, Alamo was ordered to see Dr. David E. Hartman, a neuropsychologist, for additional medical testing. After completing various tests, Dr. Hartman informed Alamo that he would need two weeks to evaluate the results, which would then be given to Dr. Wong. Dr. Hartman instead took approximately a month and a half to get Dr. Wong the exam results.

**ANSWER**:      **Defendant City admits Plaintiff was scheduled for an evaluation by**

**neuropsychologist Dr. David Hartman on December 20, 2016, and further admits the final**

**report of the evaluation was presented to the CFD on February 2, 2017.  Defendant City**

**denies the remaining allegations in paragraph 73.  Defendant Bliss lacks knowledge or**

**information sufficient to form a belief as to the truth of the allegations in paragraph 73.**

74.     On February 9, 2017, Dr. Rone sent a letter to Dr. Wong declaring Alamo unfit for duty. Alamo requested a second medical opinion and was subsequently denied.

**ANSWER**:     **Defendant City admits Plaintiff was found to be unfit for duty based on the fitness for duty evaluation conducted by Dr. Rone on February 9, 2017.  Defendant City admits Plaintiff requested a second medical opinion, which was denied.   Defendant Bliss lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 74.**

75.     On February 17, 2017, Alamo met with Dr. Wong, who provided him with documents to request a reasonable accommodation. Alamo subsequently gave these papers to Dr. McLaughlin, who informed Alamo that it would be ethically wrong for him to sign a document indicating that Alamo suffers from a disability and is in need of reasonable accommodations. He requested that Alamo seek a second opinion.

**ANSWER**:     **Defendant City admits Plaintiff was provided with a reasonable accommodation packet of documents from the City.  Defendant City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 75.  Defendant Bliss lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 75.**

76.     On May 19, 2017, Alamo met with Dr. Wong and Paramedic in Charge Rula, who informed him that he had exhausted all available medical time and that he would be contacted by the personnel office with further information.

**ANSWER**:     **Defendant City admits Plaintiff met with Dr. Wong on May 19, 2017 and was informed that he had exhausted his medical layup time.  Defendant City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 76.  Defendant Bliss lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 76.**

77.     On May 22, 2017, Alamo met with Dr. Susan Vaughn, a neurologist at Hines VA Hospital, and provided her with the testing results from Dr. Hartman. Dr. Vaughn asked Alamo if he had an employment attorney. Alamo informed her that his Union was involved but that he had exhausted all resources to be returned to duty. Dr. Vaughn read the test results from Dr. Hartman and stated that they were very subjective, slanted, and demoralizing. She noted that the language being used by Dr. Hartman indicated that he did not like Alamo and therefore

concluded the test results were invalid. Dr. Vaughn also recommended that Alamo be seen for a second opinion.

**ANSWER**:     **Defendants lack knowledge or information sufficient to form a belief as to**

**the truth of the allegations in paragraph 77.**

78.     On June 6, 2017, Alamo obtained and submitted a second medical release from Dr. McLaughlin authorizing his full return to duty.

**ANSWER**:     **Defendant City denies receipt of a second medical release from Dr.**

**McLaughlin.  Defendant Bliss lacks knowledge or information sufficient to form a belief as**

**to the truth of the allegations in paragraph 78.**

79.     On July 11, 2017, Alamo received a letter dated July 6, 2017 from Loretta Flores, CFD Assistant Director of Human Resources, informing him that his leave was up and he must either return to work, resign, or ask to be placed on an unpaid medical leave of absence.

**ANSWER**:     **Defendant City admits a letter dated July 6, 2017 was sent to Plaintiff via**

**regular and certified mail informing him that he exhausted all medical leave allowed for**

**sworn employees, and the CFD records reflect he is "active status" without pay.  The letter**

**further stated that in order to update his status, CFD requested he return to work, resign**

**or go on a leave of absence.  Defendant City admits the July 6 letter was also sent by CFD**

**Assistant Director, Human Resources Loretta Flores to Plaintiff via email.  Further**

**answering, Defendant City states that a second letter was sent July 12, 2017 via email.  This**

**letter superseded the July 6, 2017 letter.  In the July 12 letter, CFD requested that Plaintiff**

**either resign or go on a leave of absence.  Defendant Bliss lacks knowledge or information**

**sufficient to form a belief as to the truth of the allegations in paragraph 79.**

80.     Alamo immediately responding [sic] in writing and via e-mail that he wished to

return to work.**ANSWER**:     **Defendant City admits Plaintiff sent correspondence to Loretta**

**Flores via  certified mail, which was received on July 17, 2017, and via email on July 28,**

24

**2017, wherein he indicated that he wished to return to work. Defendant City lacks**

**knowledge or information sufficient to form a belief as to the truth of the remaining**

**allegation in paragraph 80 because the term "immediately" is vague and ambiguous.**

**Defendant Bliss lacks knowledge or information sufficient to form a belief as to the truth of**

**the allegations in paragraph 80.**

81. On July 12, 2017, Alamo received another letter from Flores. This one gave him only two options – to either resign or go on an unpaid medical leave of absence. After inquiring with the City, Alamo was informed by Janice Hogan, CFD Deputy Chief of Employee Relations, on July 18, 2017, that the July 6th letter had been sent to him in error and should be disregarded. Hogan explained that if Alamo did not reply to the July 12th letter by July 28, 2017, he would be designated as "absent without authorized leave."

**ANSWER**: **Defendant City admits the allegations in paragraph 81. Defendant Bliss**

**lacks knowledge or information sufficient to form a belief as to the truth of the allegations**

**in paragraph 81.**

82. On July 20, 2017, the Seventh Circuit reversed this Court's dismissal of Alamo's Third Amended Complaint and remanded the case back for further proceedings on all Counts appealed.

**ANSWER**: **Defendants admit the allegations in paragraph 82.**

83. On July 24, 2017, Alamo submitted a written response to Flores, detailing some of the harassment, discrimination, and retaliation he had experienced, and reiterating that he wished to return to work.

**ANSWER**: **Defendant City denies the allegations in paragraph 83. Defendant Bliss lacks**

**knowledge or information sufficient to form a belief as to the truth of the allegations in**

**paragraph 83.**

84. On August 8, 2017, Alamo met with Personnel and declined to resign or take a leave of absence. The next day, August 9, 2017, he was informed by Adrianne Bryant, CFD Deputy Commissioner of Human Resources, that he was being officially discharged from the CFD, effective one day prior.

**ANSWER**:     **Defendant City admits Plaintiff met with CFD Personnel and declined to resign or take a leave of absence. Defendant City admits that a letter dated August 9, 2017 and signed by CFD Deputy Commissioner of Human Resources Adrianne Bryant informed Plaintiff that he was discharged from CFD effective August 8, 2017. Defendant Bliss lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 84.**

85.     The actions complained of above prevented Alamo from engaging in his chosen profession, caused him to lose his salary and benefits and have jeopardized his financial security.

**ANSWER**:     **Defendant City denies the allegations in paragraph 85, and further denies it violated any federal, state, or local laws. Defendant Bliss lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 85.**

86.     The actions complained of above caused Alamo to lose wages, incur expenses and to suffer mentally and physically.

**ANSWER**:     **Defendant City denies the allegations in paragraph 86, and further denies it violated any federal, state, or local laws. Defendant Bliss lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 86.**

### COUNT I
### Title VII - National Origin Discrimination/Hostile Work Environment
### (Against Defendant the City of Chicago)

87.     Alamo realleges the foregoing paragraphs as though fully set forth herein.

**ANSWER**:      **Defendant City re-states its answers to paragraphs 1 through 86.**

88.     Alamo is a member of a protected class by national origin. He is a Puerto Rican Latino.

**ANSWER**: **Defendant City admits that its personnel records, including a copy of Plaintiff's birth certificate, indicate that Plaintiff was born in the United States, and that Plaintiff has identified his race/ethnicity as "Hispanic." Defendant City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 88.**

89.    Alamo, in all respects, was performing his job in a manner that was consistent with the City's legitimate business expectations.

**ANSWER**:    **Defendant City denies the allegations in paragraph 89**.

90.    Alamo suffered adverse employment actions as alleged above in that he was verbally and physically harassed and intimidated because of his national origin, and that such conduct was condoned or tolerated by those in a position to stop it because of Alamo's national origin.

**ANSWER**:    **Defendant City denies the allegations in paragraph 90**.

91.    Defendant City was aware of and was made aware of the above described conduct; yet, Defendant City did not take any reasonable steps to protect Alamo from said intimidating, hostile, and/or offensive work environment.

**ANSWER**:    **Defendant City denies the allegations in paragraph 91, and further denies it violated any federal, state, or local laws.**

92.    Defendant City violated Alamo's rights in that the City required Alamo to work in an intimidating, hostile, and/or offensive work environment and to work under supervisors who allowed these actions to go on without taking steps to prevent them.

**ANSWER**:    **Defendant City denies the allegations in paragraph 92, and further denies it violated any federal, state, or local laws.**

93.    As a direct and proximate result of said unlawful employment practices and in disregard of Alamo's rights and sensibilities, Alamo has suffered great mental anguish, humiliation, degradation, emotional distress, pain and suffering, inconvenience, financial crisis, lost wages and benefits, future pecuniary losses and other consequential damages.

**ANSWER**:    **Defendant City denies the allegations in paragraph 93, and further denies it violated any federal, state, or local laws.**

## COUNT II
### Title VII - National Origin Discrimination/Disparate Treatment
### (Against Defendant the City of Chicago)

94.    Alamo realleges the foregoing paragraphs as though fully set forth herein.

**ANSWER**:    **Defendant City re-states its answers to paragraphs 1 through 93.**

95.    Alamo is a member of a protected class by race or national origin. He is a Puerto Rican Latino.

**ANSWER**:    **Defendant City admits that its personnel records, including a copy of Plaintiff's birth certificate, indicate that Plaintiff was born in the United States, and that Plaintiff has identified his race/ethnicity as "Hispanic." Defendant City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 95.**

96.    Alamo, in all respects, was performing his job in a manner that was consistent with the City's legitimate business expectations.

**ANSWER**:    **Defendant City denies the allegations in paragraph 96.**

97.    Alamo suffered an adverse employment actions [sic] as alleged above in that he was detailed excessively and that he had hurdles and challenges placed before him in his attempts to return to work after a medical leave of absence because of his national origin.

**ANSWER**:    **Defendant City denies the allegations in paragraph 97.**

98.    Upon information and belief, similarly situated white employees of the City of Chicago have not suffered the excessive detailing nor the difficulties in returning to work following medical leaves of absence that Alamo has endured.

**ANSWER**:    **Defendant City denies the allegations in paragraph 98.**

99.    Defendant City's actions in its agents and employees intentionally engaging in and condoning national origin discrimination against Alamo has caused him great mental

anguish, humiliation, degradation, emotional distress, pain and suffering, inconvenience, financial crisis, lost wages and benefits, future pecuniary losses and other consequential damages.

**ANSWER**:    **Defendant City denies the allegations in paragraph 99**.

## COUNT III
### Title VII - Retaliation
### (Against Defendant the City of Chicago)

100.    Alamo realleges the foregoing paragraphs as though fully set forth herein.

**ANSWER**:    **Defendant City re-states its answers to paragraphs 1 through 99.**

101.    As alleged above, Alamo reported national origin harassment and an intimidating, hostile and/or offensive work environment resulting from other members of CFD to his superiors at CFD pursuant to his rights under Title VII and under the CFD's policies and procedures.

**ANSWER**:    **Defendant City denies the allegations in paragraph 101, and further denies it engaged in harassment in violation of any federal, state, or local laws.**

102.    Defendant City of Chicago has retaliated against Alamo as alleged above for reporting that harassment and an intimidating, hostile and/or offensive work environment based on his national origin by placing hurdles and challenges before him in his attempts to return to work after a medical leave of absence.

**ANSWER**:    **Defendant City denies the allegations in paragraph 102, and further denies it engaged in retaliation in violation of any federal, state, or local laws.**

## COUNT IV
### Section 1983 - Race Discrimination/Hostile Work Environment
### (Against Defendant Charlie Bliss)

103.    Alamo realleges the foregoing paragraphs as though fully set forth herein.

**ANSWER**:    **Defendant Bliss re-states his answers to paragraphs 1 through 86 to the extent those allegations were made against him.  Defendant Bliss does not have to answer the allegations in Counts I-III, as those allegations are made only against the City.**

104.    The actions of Defendant Bliss complained of in paragraphs above deprived Alamo of his equal protection rights as a firefighter employed by the City of Chicago.

**ANSWER**:     **Defendant Bliss denies the allegations in paragraph 104, and further denies**

**he engaged in discriminatory conduct in violation of any federal, state, or local laws.**

105.     The actions of Bliss complained of in the paragraphs above were done under color of law in that they were undertaken by Defendant Bliss in and through his official capacity.

**ANSWER**:     **Defendant Bliss denies he engaged in any illegal conduct in violation of**

**federal, state or local law.  Defendant Bliss admits that his actions were taken under color**

**of law and in his official capacity.**

106.     The actions complained of in the paragraphs above were done because of Alamo's race.  Defendant Bliss subjected Alamo to discriminatory and harassing treatment by failing to remedy an intimidating, hostile, and/or offensive work environment. Specifically, as to Bliss, he was aware that other employees were physically and verbally harassing Alamo because of his race and national origin, but did nothing to stop it, though it was his job to do so. Upon information and belief, he would not (and has not) permitted such physical and verbal harassment of similarly situated non-Latino firefighters.

**ANSWER**:     **Defendant Bliss denies the allegations in paragraph 106, and denies he**

**engaged in any illegal conduct in violation of federal, state or local law.**

107.     The result of these unlawful actions has been to deprive Alamo of equal employment opportunities because of his race, in violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

**ANSWER**:     **Defendant Bliss denies the allegations in paragraph 107, and denies he**

**engaged in illegal conduct in violation of the Fourteenth Amendment or any other federal,**

**state or local law.**

### COUNT V
### ADA – Disability Discrimination
### (Against Defendant the City of Chicago)

108.     Alamo realleges the foregoing paragraphs as though fully set forth herein.

**ANSWER**:     **Defendant City re-states its answers to paragraphs 1 through 102 to the**

**extent those allegations are made against it.**

109. The ADA prohibits an employer from discriminating against an individual based upon (amongst other things) his disability.

**ANSWER**: **Defendant City admits the ADA prohibits covered employers from discriminating against covered individuals based on their covered disability. The City lacks knowledge or information sufficient to form a belief as to the truth of Plaintiff's phrase "amongst other things." Defendant City denies all remaining allegations in paragraph 109 and specifically denies any inference that it violated the ADA or any other federal, state or local law.**

110. At all times relevant hereto, Alamo was an individual with a "disability" and/or was considered to have a "disability," as that term is defined in §3(2) of the ADA, 42 U.S.C. § 12102, in that he suffered from Post-Traumatic Stress Disorder ("PTSD").

**ANSWER**: **Defendant City lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 110.**

111. Alamo's disability does not affect his ability to work as a CFD firefighter. Alamo has performed his job and duties for 11-plus years without any restrictions or need for disability accommodations.

**ANSWER**: **Defendant City admits that Plaintiff performed his job as a Firefighter without an accommodation when he reported to work and was not on a personal or medical leave of absence. Defendant City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 111.**

112. Since being placed on extended unpaid medical leave in July 2016, Alamo made repeated requests to return to work. Alamo also provided medical clearance for that return from his treating medical professionals.

**ANSWER**: **Defendant City admits that Plaintiff made requests to return to work after he took a medical leave of absence in July 2016, and further admits he provided a doctor's note to CFD from his personal physician releasing him to return to work. Defendant City denies the CFD cleared him to return to work after his July 2016 medical leave of absence.**

113.    Defendant City refused these repeated requests and eventually terminated Alamo's employment.

**ANSWER**:    **Defendant City admits it did not return Plaintiff to work because a fitness for duty evaluation found him unfit to return to work as a Firefighter.  Defendant City admits it terminated Plaintiff's employment in August 2017 because he exhausted his medical leave time and refused to apply for a leave of absence to secure his position with the CFD.**

114.    Consequently, Defendant City failed to return Alamo to work on account of his disability. Given that Alamo's disability does not require accommodations, employing Alamo as a firefighter would not be unduly burdensome for the City.

**ANSWER**:    **Defendant City denies that it failed to return Plaintiff to work "on account of his disability," and further denies that it violated the ADA or any other federal, state or local law.  Defendant City lacks knowledge or information sufficient to form a belief as to the truth of the  remaining allegations in paragraph 114.**

115.    As a direct and proximate result of said unlawful employment practices and in disregard of Alamo's rights and sensibilities, Alamo has suffered great mental anguish, humiliation, degradation, emotional distress, pain and suffering, inconvenience, financial crisis, lost wages and benefits, future pecuniary losses and other consequential damages.

**ANSWER**:    **Defendant City denies the allegations in paragraph 115.**


## COUNT VI
### Title VII - National Origin Discrimination/Wrongful Termination
### (Against Defendant the City of Chicago)

116.    Alamo realleges the foregoing paragraphs as though fully set forth herein.

**ANSWER**:    **Defendant City re-states its answers to paragraphs 1 through 102 and108 through 115 to the extent those allegations were made against it.**

117.    Alamo is a member of a protected class by race or national origin. He is a Puerto Rican Latino.

**ANSWER**:    **Defendant City admits that its personnel records, including a copy of Plaintiff's birth certificate, indicate that Plaintiff was born in the United States, and that Plaintiff has identified his race/ethnicity as "Hispanic." Defendant City lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 117.**

118.    Alamo, in all respects, was performing his job in a manner that was consistent with the City's legitimate business expectations.

**ANSWER**:    **Defendant City denies the allegations in paragraph 118**.

119.    Alamo suffered an adverse employment action in that he was prevented from returning to work and was wrongfully terminated on account of his national origin. Alamo was ultimately terminated as a result of the Defendant City's refusal to allow him to return to duty.

**ANSWER**:    **Defendant City denies the allegations in paragraph 119**.

120.    Upon information and belief, similarly situated white employees of the City of Chicago have not had the difficulties in returning to work following medical leaves of absence that Alamo has endured, nor have they been terminated following such leaves of absence.

**ANSWER**:    **Defendant City denies the allegations in paragraph 120**.

121.    Defendant City's actions in its agents and employees intentionally engaging in and condoning national origin discrimination against Alamo has caused him great mental anguish, humiliation, degradation, emotional distress, pain and suffering, inconvenience, financial crisis, lost wages and benefits, future pecuniary losses and other consequential damages.

**ANSWER**:    **Defendant City denies the allegations in paragraph 121**.

**COUNT VII**
**Title VII – Retaliation/Wrongful Termination**
**(Against Defendant the City of Chicago)**

122.    Alamo realleges the foregoing paragraphs as though fully set forth herein.

**ANSWER**:     **Defendant City re-states its answers to paragraphs 1 through 102 and108**

**through 121  to the extent those allegations were made against it.**

123.     Alamo reported national origin harassment and an intimidating, hostile and/or offensive work environment resulting from other members of CFD to his superiors at CFD pursuant to his rights under Title VII and under the CFD's policies and procedures.

**ANSWER**:     **Defendant City denies the allegations in paragraph 123, and further denies it**

**violated Title VII, or any other federal, state, or local laws.**

124.     Defendant City of Chicago has retaliated against Alamo for reporting such information to his superiors and others at the CFD by placing hurdles and challenges before him in his attempts to return to work after a medical leave of absence.

**ANSWER**:     **Defendant City denies the allegations in paragraph 124, and further denies it**

**retaliated against Plaintiff in violation of any federal, state, or local laws.**

125.     As a direct and proximate result of Alamo reporting harassment and an intimidating, hostile and/or offensive work environment, Defendant City of Chicago has terminated Alamo's employment with the CFD.

**ANSWER**:     **Defendant City denies the allegations in paragraph 125, and further denies it**

**engaged in harassment against Plaintiff in violation of any federal, state, or local laws.**

**COUNT VIII**
**Section 1981 – Race Discrimination/Wrongful Termination**
**(Against Defendant the City of Chicago)**

126.     Alamo realleges the foregoing paragraphs as though fully set forth herein.

**ANSWER**:     **Defendant City re-states its answers to paragraphs1 through 102 and 108**

**through 125 to the extent those allegations were made against it.**

127.     The actions complained of above have interfered with Alamo's ability to make, enter into and enforce his contact [sic] of employment with the City of Chicago on terms equal to non-Latino Firefighters, thereby violating Alamo's rights under Section 1981.

**ANSWER**:     **Defendant City denies the allegations in paragraph 127, and further**

**denies it violated any federal, state, or local laws**.

128.     The actions of Defendant were done with malice or reckless indifference to Alamo's federally protected rights.

**ANSWER**:     **Defendant City denies the allegations in paragraph 128**.

129.     Defendant City's actions in intentionally engaging and condoning racial discrimination against Alamo have deprived Alamo of his equal protection rights as a firefighter employed by the City of Chicago and caused great mental anguish, humiliation, degradation, emotional distress, pain and suffering, inconvenience, financial crisis, lost wages and benefits, future pecuniary losses and other consequential damages.

**ANSWER**:     **Defendant City denies the allegations in paragraph 129, and further denies it engaged in or condoned racial discrimination against Plaintiff in violation of any federal, state, or local laws.**

## COUNT IX
### Section 1981 – Retaliation
### (Against Defendant the City of Chicago)

130.     Alamo realleges the foregoing paragraphs as though fully set forth herein.

**ANSWER**:     **Defendant City re-states its answers to paragraphs 1 through 102 and108 through 129 to the extent those allegations were made against it.**

131.     The actions complained of above have interfered with Alamo's ability to make, enter into and enforce his contact of employment with the City of Chicago on terms equal to non-Latino Firefighters, thereby violating Alamo's rights under Section 1981.

**ANSWER**:     **Defendant City denies the allegations in paragraph 131, and further denies it violated any federal, state, or local laws**.

132.     The actions of Defendant City were done with malice or reckless indifference to Alamo's federally protected rights.

**ANSWER:**     **Defendant City denies the allegations in paragraph 132**.

133.     Defendant City's actions in intentionally engaging and condoning racial discrimination against Alamo have deprived Alamo of his equal protection rights as a firefighter employed by the City of Chicago and caused great mental anguish, humiliation, degradation,

emotional distress, pain and suffering, inconvenience, financial crisis, lost wages and benefits, future pecuniary losses and other consequential damages.

**ANSWER**:    **Defendant City denies the allegations in paragraph 133, and further denies it**

**engaged in or condoned racial discrimination against Plaintiff in violation of any federal,**

**state, or local laws.**

### COUNT X
### IHRA – Discrimination/Disability
### (Against the City of Chicago)

134.    Alamo realleges the foregoing paragraphs as though fully set forth herein.

**ANSWER**:    **Defendant City re-states its answers to paragraphs 1 through 102 and 108**

**through 133, to the extent those allegations were made against it.**

135.    Alamo is an individual with a disability as defined within Section 1-103(I) of the IHRA as he suffers from a traumatic brain injury.

**ANSWER**:    **Defendant City lacks knowledge or information sufficient to form a belief as**

**to the truth of the allegations in paragraph 135.**

136.    Alamo engaged in activity protected by the IHRA when he filed this civil rights complaint in September 2012.

**ANSWER**:    **Defendant City admits that the filing of a civil rights complaint is a protected**

**activity under the IHRA.  Defendant City lacks knowledge or information sufficient to**

**form a belief as to the truth of the remaining allegations in paragraph 136.**

137.    Under the IHRA, "unlawful discrimination means discrimination against a person because of his or her race, color, religion, national origin, ancestry, age, sex, marital status, order of protection status, disability, military status, sexual orientation, pregnancy, or unfavorable discharge from military service ...." 775 ILCS 5/1-103(Q).

**ANSWER**:    **Defendant City admits the quoted language is set forth in 775 ILCS** 5/1-

**103(Q).**

138.    The IHRA makes it unlawful "for any employer to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for

training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination or citizenship status." 775 ILCS 5/2-102(A).

**ANSWER**:    **Defendant City admits the quoted language is set forth in 775 ILCS** 5/2-

**102(A).**

139.    As alleged above, the City failed to allow Alamo to return to work after his second leave, and subjected him to unequal terms and conditions of employment, because of his disability, thereby violating Alamo's rights under Section 775 ILCS 5/6-101 of the IHRA.

**ANSWER**:    **Defendant City admits Plaintiff was not allowed to return to work after his**

**leave of absence because he was found unfit for duty in February 2017.  Defendant City**

**denies the remaining allegations of paragraph 139, and denies it violated any federal, state,**

**or local laws**.

140.    Defendant City's actions against Alamo have deprived Alamo of his human rights and caused great mental anguish, humiliation, degradation, emotional distress, pain and suffering, inconvenience, financial crisis, lost wages and benefits, future pecuniary losses and other consequential damages.

**ANSWER**:    **Defendant City denies the allegations in paragraph 140.**

## COUNT XI
### IHRA – Retaliation
### (Against the City of Chicago)

141.    Alamo realleges the foregoing paragraphs as though fully set forth herein.

**ANSWER**:    **Defendant City re-states its answers to paragraphs 1 through 139 to the**

**extent those allegations were made against it.**

142.    Alamo is an individual with a disability as defined within Section 1-103(I) of the IHRA as he suffers from a traumatic brain injury.

**ANSWER**:    **Defendant City lacks knowledge or information sufficient form a belief as to**

**the truth of the allegations in paragraph 142.**

143.    Alamo engaged in activity protected by the IHRA when he filed this civil rights complaint in September 2012.

**ANSWER**: **Defendant City admits that the filing of a civil rights complaint is a protected activity under the IHRA.**

144.     The IHRA makes it unlawful for an employer to retaliate against an employee because "he or she has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination, sexual harassment in employment, ... because he or she has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this Act, or because he or she has requested, attempted to request, used, or attempted to use a reasonable accommodation as allowed by this Act." 775 ILCS 5/6-101(A).

**ANSWER**: **Defendant City admits the quoted language is set forth in 775 ILCS 6/1-101(A).**

145.     As alleged above, the City retaliated against Alamo by failing to allow him to return to work after his second leave, and by subjecting him to unequal terms and conditions of employment because of his actions in opposing unlawful discrimination, thereby violating Alamo's rights under Section 775 ILCS 5/6-101 of the IHRA.

**ANSWER**: **Defendant City denies the allegations in paragraph 145, and further denies it retaliated against Plaintiff in violation of any state, federal or local laws.**

146.     Defendant City's actions against Alamo have deprived Alamo of his human rights and caused great mental anguish, humiliation, degradation, emotional distress, pain and suffering, inconvenience, financial crisis, lost wages and benefits, future pecuniary losses and other consequential damages.

**ANSWER**: **Defendant City denies the allegations in paragraph 146.**

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Alamo prays that this Court:

A.     Enter judgment in favor of Alamo and against the Defendants for violation of Alamo's right under Title VII, the ADA, Section 1983, Section 1981, and the IHRA;

B.     Declare that the actions of the Defendants were discriminatory;

C.     Award Alamo compensatory damages, including but not limited to, lost wages and other benefits, in such amount as will reasonably compensate him for his losses, and damages for emotional distress;

D.     Award Alamo punitive damages in such amount as the Court deems proper;

E.      Award Alamo his costs, attorneys' fees and non-taxable expenses in this action;

F.      Reinstate Alamo to his position as a Firefighter with the CFD;

G.      Grant Alamo other and further relief as the Court deems equitable and just.

**ANSWER**:      **Defendants deny Plaintiff is entitled to any of the requested relief**.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues herein.

Defendants demand a trial by jury on all issues herein.

## AFFIRMATIVE DEFENSES

1.      Any Title VII or ADA claims that occurred more than 300 days prior to the filing of Plaintiff's EEOC Charges are time-barred.

2.      Any IHRA claims that occurred more than 180 days prior to the filing of Plaintiff's IDHR Charge are time-barred.

3.      Any Title VII and ADA claims in Plaintiff's Fourth Amended Complaint that are not within the scope of Plaintiff's EEOC Charges are barred for failure to exhaust administrative remedies.

4.      Any IHRA claims in Plaintiff's Fourth Amended Complaint that are not within the scope of Plaintiff's IDHR Charge are barred for failure to exhaust administrative remedies.

5.      Defendant Bliss is entitled to qualified immunity on the claims arising under 42 U.S.C. § 1983.

6.      Any conduct of which Plaintiff complains arising under Section 1983 that occurred more than two years before he filed his complaint is time-barred.

7. Any conduct of which Plaintiff complains arising under Section 1981 that occurred more than four years before he filed his complaint is time-barred.

8. Plaintiff's Section 1981 claims against the City are improper because Section 1983 is the exclusive remedy for state actors. *Campbell v. Forest Preserve Dist. of Cook County*, 752 F.3d 665 (7th Cir. 2014)

9. To the extent Plaintiff provided false or misleading information on his Chicago Fire Department employment application, he would have been terminated based on after-acquired evidence and he is not entitled to back pay.

10. To the extent Plaintiff is seeking punitive damages against the City, he is not entitled to recover punitive damages against a municipality.

**DATED**: **January 10, 2019**

Respectfully submitted,

EDWARD N. SISKEL
Corporation Counsel of the City

By:  *s/ Melanie Patrick Neely*
MELANIE PATRICK NEELY
Supervising Assistant Corporation Counsel

Employment Litigation Division
30 North La Salle Street, Suite
1020 Chicago, Illinois 60602
(312) 744-5453